Ellen W. **SCHRECKER**, Plaintiff,

v.

**U.S. DEPARTMENT OF JUSTICE,**
Defendant.

No. Civ.A. 95–0026 (RCL).

United States District Court,
District of Columbia.

Aug. 12, 1998.

---

James H. Lesar, Washington, DC, for Plaintiff.

Suzanne C. Nyland, Assistant United States Attorney, Washington, DC, for Defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court on the cross-motions for summary judgment, pursuant to Fed.R.Civ.P. 56(c), of plaintiff Ellen Schrecker and defendant U.S. Department of Justice. Based upon the memoranda in support of and in opposition to the cross-motions, the entire record thereto and the relevant law, plaintiff's motions will be granted in part and denied in part; defendant's motions will be denied.

## I. Background

### A. Factual and Procedural History

Plaintiff Ellen Schrecker first wrote to the Federal Bureau of Investigation ("FBI") on October 3, 1988 when she submitted a request for agency records maintained in FBI headquarters and field offices on Gerhart Eisler and Clinton Jencks. Both were subjects of Justice Department investigations during the McCarthy Era, in 1947 and 1953 respectively. Eisler was a German communist who lived in the United States from either the late 1930's or 1941 until 1949. The Justice Department indicted Jencks, an official of the Mine, Mill and Smelter Workers International Union in New Mexico, for filing a false affidavit under the Taft–Hartley law.

Schrecker requested these documents as part of her research for a book on related matters. Her requests were incorporated into a new request from her counsel on November 25, 1994. In accordance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Schrecker filed this lawsuit, concerning the adequacy of the FBI's releases on January 6, 1995.

On April 24, 1989, the FBI had released 947 of 1356 pages responsive to her request on Eisler, but withheld certain documents or portions thereof, invoking 5 U.S.C. § 552(b)(1) (information containing classified national security information); 552(b)(3) (pursuant to Fed.R.Crim.P. 6(e)) (information containing grand jury materials); 552(b)(7)(C) (information that could reasonably be expected to constitute an unwarranted invasion of personal privacy); 552(b)(7)(D) (information that could reasonably be expected to disclose the identity of a confidential source); and 552(b)(7)(E) (information that would disclose techniques and procedures for law enforcement investigations and prosecutions). On August 20, 1991, the FBI had released 594 out of 690 processed pages relating to Eisler. The FBI next released 4,121 pages out 4,245 Eisler pages on April 13, 1995. FBI headquarters released the next set of documents on July 14, 1995, providing 2,656 out of 3,461 pages on Eisler. Subsequently the FBI released 2,252 out of 3,106 pages on November 6, 1995, withholding information in concert with all the aforementioned FOIA exemptions as well as 5 U.S.C. § 552(b)(2) (information that pertains solely to the internal personnel rules and practices of an agency).

In response to the requests for material on Jencks, FBI headquarters first released 837 out of 950 pages on March 9, 1995. On May 1, 1995, FBI headquarters provided a second set of documents, releasing 1,277 of 1,501 pages. FBI headquarters released 2,645 out of 3,136 pages on June 30, 1995. Pages or portions of pages were withheld by the FBI pursuant to FOIA Exemptions 1, 2, 3, 7(C), 7(D), and 7(E). Subsequently, on September 20, 1995, the FBI headquarters released Jencks documents from two files that were reprocessed under new classification procedures.

FBI field offices also released documents in response to Schrecker's request. The first set came from the FBI's El Paso Field Office on October 9, 1996, when it released 50 of 54 pages on Jencks. Pages or portions were withheld pursuant to FOIA Exemptions 2, 3 (pursuant to Fed.R.Crim.P. 6(e)), 7(C), and 7(D). The FBI's Albuquerque Field Office released 90 of 104 pages responsive to the request for Jencks documents on November 29, 1996. For these documents, the FBI invoked FOIA Exemptions 1, 2, 7(C) and (7)(D).

Problems in this litigation resulted from filing delays, difficulties in the search process, and disputes between the parties over fee waivers. On August 6, 1997, this court granted plaintiff's motion for summary judgment as to a fee waiver. This court found, under the fee waiver standard, that the documents at issue were in the public interest and would not be used primarily for the commercial interest of the plaintiff. Accordingly, this court ordered the defendant to waive all copying fees and return any and all fees paid by plaintiff. Following that order, the FBI released additional documents on or about August 29, 1997.

This case suffered further delay when the parties failed to meet deadlines established pursuant to a Stipulation and Amended Scheduling Order on September 29, 1997. Consequently, the court issued another order

for timely compliance with new deadlines regarding two tracks of summary judgment motions. The parties finally submitted the appropriate filings for the first track and this court proceeded to evaluate their claims. Since the parties continued to argue points for their first summary judgment motions in their filings supporting their second motions for summary judgment, this court takes those arguments and revelations into account in this memorandum.

Defendant Department of Justice initially argued in favor of summary judgment, contending that documents were properly withheld and redacted pursuant to FOIA. Since that time, the agency has changed that contention regarding Exemptions 1 and 7(E). Conversely, Schrecker asks the court to award summary judgment in her favor, arguing that documents were redacted and withheld improperly, especially in light of the release of previously withheld documents, recent political changes and the number of years that have passed since the investigations. She also moves that this court 1) order the defendant to conduct a further search for responsive documents; 2) order the defendant to reprocess the documents at issue; 3) order defendant to consult standard sources to determine whether the persons to whom redacted material pertains are deceased; and 4) permit the plaintiff to engage in limited discovery.

## II. FOIA Standard of Review:

■ The Freedom of Information Act, 5 U.S.C. § 552, as amended by the Freedom of Information Reform Act of 1986, §§ 1801–04 of Pub.L. No. 99–570, 100 Stat. 3207, 3207–48 (1986) establishes a statutory right for citizens to gain access to government information. The Act creates a basic presumption that agency records should be accessible to the public and commands government agencies to make records available upon demand unless the request falls within one of the nine exemptions.

■ Summary judgment in a FOIA action is appropriate when the pleadings together with the declarations show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby,* Inc. 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202; *Alyeska Pipeline Serv. Co. v. EPA,* 856 F.2d 309, 313 (D.C.Cir.1988) (mere conflict in affidavits not sufficient to preclude an award of summary judgment); *Weisberg v. Department of Justice,* 627 F.2d 365, 368 (D.C.Cir.1980). Courts review FOIA suits de novo. However, the agency carries the burden of justifying nondisclosure, See 5 U.S.C. § 552(a)(4)(B); *Department of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 755, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

■ Agencies may rely on the declarations of its officials in order to sustain this burden of proof in a FOIA case. *See Oglesby v. Department of the Army,* 920 F.2d 57, 68 (D.C.Cir.1990); *Goland v. CIA,* 607 F.2d 339, 352 (D.C.Cir.1978). The agency's declarations are accorded a presumption of expertise. *Pharmaceutical Manufacturers Ass'n v. Weinberger,* 411 F.Supp. 576, 578 (D.D.C. 1976). However, the declarations must be clear, specific and adequately detailed; they must describe the withheld information and the reason for nondisclosure in a factual and nonconclusory manner; and they must be submitted in good faith. *See Hayden v. NSA,* 608 F.2d 1381, 1387 (D.C.Cir.1979).

## III. Reprocessing of Documents

■ This case involves approximately 18,000 pages, most of which were released but some withheld in accordance with FOIA. An agency seeking to withhold information must provide the court with "a reasonable basis to evaluate the claim of privilege." *Gallant v. NLRB,* 26 F.3d 168, 173 (D.C.Cir. 1994) (quoting *Delaney, Migdail & Young, Chartered v. IRS,* 826 F.2d 124, 128 (D.C.Cir. 1987)). A court typically analyzes these withholdings by reviewing *Vaughn* indices, which includes a list from the agency of the challenged documents correlated by their claimed exemptions. *See Vaughn v. Rosen,* 484 F.2d 820, 827 (D.C.Cir.1973). The index enables a reviewing court to effectively determine whether the agency's decision to withhold documents is justified. *See Krikorian v. Department of State,* 984 F.2d 461,

466–67 (D.C.Cir.1993) (reversing the district court for failure to make detailed findings as to withheld documents).

In this case, Schrecker initially selected 30 documents for defendant to include in a *Vaughn* sample index and the parties filed their first cross-motions for summary judgment. Schrecker contends that the FBI failed to sustain its burden of proof to show that the withheld materials are clearly exempt from disclosure. On this matter, plaintiff argues that the FBI should have to reprocess all documents because the *Vaughn* index eliminates many exemption claims which were asserted in the original release. According to Schrecker, all but three of the initial Exemption 1 claims invoked by the FBI have been withdrawn. She adds that all documents which had Exemption 7(E) claims have been disclosed and that the FBI relinquished significant numbers of 7(C) and 7(D) claims.

As described in defendant's first motion for summary judgment, the FBI rereviewed all exempt information contained in the documents in response to Schrecker's lawsuit. While this resulted in declassification and release of some information, portions were found to be exempt under other FOIA exemptions. In addition, the FBI found new information as a result of a rereview. Documents processed and released before 1995 were reprocessed, taking into account changes in the law, in defendant's FOIA internal processing policy, and in standards governing classification of documents for national security purposes. Documents identified by Schrecker for the *Vaughn* index pursuant to this court's November 27, 1996 Order were reprocessed a third time in order to incorporate a 1995 change in classification standards.

In its opposition to plaintiff's second cross-motion for summary judgment, defendant states that the FBI will reprocess all documents responsive to Schrecker's FOIA request from which information was withheld pursuant to FOIA Exemptions 1 and 7(E).

The defendant also agreed to release HQ 100–39680–144, originally withheld pursuant to Exemption 7(D). In an accompanying declaration, the FBI revealed that this 66–page document is in the public domain.[1]

■■■■ When reviewing an agency's decision to release documents withheld previously, a district court must examine closely the initial exemption claims. *Bonner v. Department of State*, 928 F.2d 1148, 1151 (D.C.Cir. 1991). Although reprocessing an entire group of documents would probably result in further declassification, this does not necessarily warrant compelling an agency to reprocess an entire request. Even though some documents may become releasable over time, "[i]f the sample uncovers no excisions or withholding improper when made, then the agency's action ordinarily should be upheld." *Id.* at 1153. "The government cannot be expected to follow an endlessly moving target." *Meeropol v. Meese*, 790 F.2d 942, 959 (D.C.Cir.1986)

■■■■ In the *Vaughn* index, an agency must disclose the reasoning behind its original decision to withhold documents at issue in the representative sample. The agency "is not relieved of that burden by a later turn over of sample documents." *Bonner*, 928 F.2d at 1154. While a full release of documents previously withheld does not demonstrate bad faith, doubt may be cast on the agency's original exemption claim when the information in question is found releasable within two years. Therefore, a district court must examine closely the initial exemption claims. *Id.*

■■■■ A court should scrutinize the decision to withhold other non-sample documents if a "significant portion" of the original exemption claims are found not to have merit. *Meeropol*, 790 F.2d at 960 (finding an error rate of 25% in a representative sample "unacceptably high"). An agency will have to reprocess all of the documents at issue under the operative standards for disclosure

---

1. According to the declaration of FBI attorney Scott Hodes, this document is the Executive Session Testimony of Clinton Jencks before the House Un-American Activities Committee, dated July 22, 1959. Hodes states that the House of Representative, Committee on Un-American Activities released the material in a report of the hearings.

if the court finds an "unacceptably high" standard. *Bonner*, 928 F.2d at 1153.

In light of the defendant's August 4, 1998 disclosure that it would now reprocess all Exemption 1 and 7(E) claims and would disclose a sixty-six page document previously withheld under Exemption 7(D), this court seriously questions the defendant's disclosure procedures. Specifically, the FBI agreed to reprocess all withholdings made pursuant to Exemption 1, which involves 2058 pages and will take approximately six months. (Hodes Decl., ¶ 15). According to the defendant, certain information originally withheld was declassified pursuant to review by the Department of Justice, Department Review Committee. (Hodes Decl., ¶ 15) However, the initial declaration by Richard Davidson stated that "the DRC reviewed all of my classification determinations in the documents at issue and concurred with the classification actions taken." (Davidson Decl., ¶ 5).

These are not the types of disclosures that an agency should make in its final filing in a case with two summary judgment tracks. Whereas this case was plagued both by delay and reconsideration of prior exemption claims, the government had ample opportunity to carefully review the documents. The court finds it inexcusable that the government only now reveals both that it will undertake reprocessing of certain exemptions and that the 66–page document should have been disclosed. Under the FBI's own admission, a "significant portion," of its withholdings may have been inappropriate. This late revelation calls into question all withholdings pursuant to this FOIA request. The problems with the documents concerning the first summary judgment motion cast doubt on the documents related to the second summary judgment motions. Therefore this court orders that the defendant reprocess all withholdings and submit appropriate affidavits regarding any future withholdings. Subsequent to such reprocessing the parties should resubmit the appropriate motions, if necessary, so that challenges which were submitted previously in two stages now merge into one. The defendant's motions for summary judgment will be denied.

## IV. Information Pertaining to Persons Who Are Deceased

 Schrecker asks the court to order the FBI to check available sources [2] in order to determine whether it is withholding information on, from or pertaining to persons who are deceased. She asserts that this information affects material withheld by the FBI pursuant to Exemptions 1, 2, 7(C), and 7(D). She criticizes the FBI's failure to indicate in its *Vaughn* index whether or not the withholdings relate to deceased persons, arguing that such information would nullify exemption claims. Schrecker maintains that the FBI should have searched such resources because of its burden to conduct a good faith search in light of the age of the documents— over twenty-five years—and because the FBI knows the withheld identities. Finally, she argues that the public interest in minimizing costs would best be served by such a search because disclosure would reduce the expense of administering FOIA.

On the other hand, the defendant states, in reference to Exemption 1 withholdings, that disclosure of the identities of FBI intelligence sources, regardless of whether they are active or inactive, alive or deceased, could reasonably be expected to cause current and potential intelligence sources to fear that their identities will be publicly revealed at some point, in spite of the FBI's present expressed or implied assurance of confidentiality. Such disclosure could subject them to public ridicule, ostracism, or jeopardize their own or their family's physical wellbeing, causing current intelligence sources to cease providing information, and discouraging potential intelligence sources from cooperating with the FBI for fear their identities will be publicly revealed at some point. (Davidson Decl., ¶ 12–14). In addition, regarding Exemption 7(C) withholdings, defendant states that it consulted publications such as *Who Was Who*, or used institutional knowledge, to verify whether individuals were deceased. (Davis Decl., ¶ 29). Finally,

---

**2.** According to Schrecker, such resources include newspaper obituaries, standard reference books such as *Who Was Who*, and the Social Security Death Benefits Index.

the defendant states that the FBI does not withhold third party information concerning Exemption 7(C) if it can determine that the third party's age would exceed 100 years.

■ An agency may redact, pursuant to Exemptions 1 and 7(D), the identity of an individual regardless of whether he/she is alive. *Reiter v. Drug Enforcement Administration*, 1998 WL 202247, *1 (D.C.Cir. March 3, 1998) (regarding Exemption 7(D)) (citing *Schmerler v. Federal Bureau of Investigation*, 900 F.2d 333, 336 (D.C.Cir.1990) ("[t]hat nearly sixty years have passed since confidential sources were interviewed and that the sources may have died is of no moment to the analysis."); and *Allen v. Department of Defense*, 658 F.Supp. 15, 20 (D.D.C.1986) (regarding Exemption 1).

Keeping in mind the Supreme Court's recognition of the congressional intent to "provide workable rules of FOIA disclosure," the Court of Appeals for the Third Circuit has held that the district court has discretion to require an agency to demonstrate that individuals whose names are redacted under 7(C) are alive. *Davin v. U.S. Dept. of Justice*, 60 F.3d 1043, 1058 (3rd Cir.1995). In so doing, the district court should consider "the number of named individuals that must be investigated, and the age of the requested records." *Id.* With a low number of individuals, an agency can be required to determine whether the individuals are alive. If the investigation took place after a significant number of years, then there is less of a chance that the individuals are still alive. Consequently, "it would be unreasonable for the district court not to assume that many of the individuals named in the requested records have died, thereby negating a privacy interest unless proving otherwise." *Id.* at 1059 (finding a diminished likelihood that individuals were still alive who were involved in an investigation that took place over sixty years prior).

On the other hand, the D.C. Circuit recently held that Exemption 7(C) continues to protect the identities of those who are de-

ceased, even though their privacy interest may be diminished. *Reiter*, 1998 WL 202247 at *1. A plaintiff must still demonstrate that the public interest merits disclosure under the appropriate 7(C) analysis. *Id.* (citing *Davis v. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C.Cir.1992). As with all Exemption 7(C) redactions, in order to warrant disclosure, the information must state a legitimate public interest of a compelling nature that "shed[s] light on the agency's performance of its statutory duties or otherwise let[s] citizens know what their government is up to." *Reiter*, 1998 WL 202247 at *4–5 (quoting *Dep't of Justice v. Reporter's Committee for Freedom of the Press*, 489 U.S. 749, 773, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

This court will not require the defendant to further search the suggested resources to determine whether certain individuals are deceased in cases where the public interest in disclosure would not be sufficient to warrant disclosure, regardless of the status of redacted individuals, under the appropriate 7(C) analysis. The court is not persuaded either by the plaintiff's reasoning that the age of the investigations warrants compelling such a search or by her public interest argument that such a search would reduce the cost of administering FOIA. If the latter argument justified tipping the scales in favor of disclosure, courts would never engage in the thoughtful balancing of interests required in 7(C) redactions of FOIA litigation. Furthermore, the court is satisfied that the FBI sufficiently considered and researched the age of individuals who might be deceased in order to determine whether to release relevant information.

## V. Adequacy of Search

■ Schrecker contends that the FBI's search was deficient because it neither located ticklers [3] nor searched its electronic surveillance (ELSUR) indices for responsive materials on Jencks and Eisler. In its last

---

3. As defined by the FBI, ticklers are "carbon or duplicative copies of FBI documents that are distributed to supervisory FBI officials and other interested FBI personnel that need to be cogni-

zant of the information." (Hodes Decl., ¶ 90) Schrecker asserts that such documents or files may contain information related to a case but not found in the main file.

filing[4], the FBI described the process by which it retained ticklers and provided relevant documents explaining the absence of ticklers. The Hodes declaration suggests that ticklers regarding Eisler and Jencks would not have been retained because "Internal Security" investigations were no longer on the list of investigations for which ticklers were requested to be retained. However, "Smith Act" investigations were still on this list. As previously represented by the defendant, Eisler and Jencks were investigated in part pursuant to the Smith Act. The defendant has not sufficiently informed the court as to how the investigations were classified. Accordingly, this court is not completely satisfied with the FBI's explanation and orders the FBI to clarify this question in a supplemental affidavit, and, if necessary, search for more ticklers.

The FBI also stated that on July 28, 1998 the ELSUR Indices were searched for any identifiable material on Eisler and Jencks. The search located one reference to a name similar to Eisler which is undergoing review. The FBI will notify the plaintiff as to the results of this review. Notwithstanding that the defendant should have provided this information earlier, the court is now satisfied that the FBI, through its affidavits, has addressed the plaintiff's concerns regarding the ELSUR. *Oglesby v. Department of Army*, 920 F.2d 57, 68 (D.C.Cir.1990) (holding that in order for a search to be found adequate an agency's affidavits should show "that the search method was reasonably calculated to uncover all relevant documents" and "identify the terms searched or explain how the search was conducted" and "explain in its affidavit that no other record system was likely to produce responsive documents."). Accordingly, the court denies in part Schrecker's motion to order defendant to conduct a further search for responsive documents. However, the court expects the FBI to timely submit both the results of its review of the ELSUR document and the affidavit regarding ticklers.

## VI. Plaintiff's Request for Discovery

■ Schrecker moves that the court permit her to engage in limited discovery in order to determine whether information withheld is substantially similar to information the government has declassified because of its age. Schrecker states that this will enable to her to raise a successful challenge, under *Oglesby*, to the Government's reliance on Exemption 1. However, in light of the FBI's agreement to reprocess all Exemption 1 claims, discovery is no longer necessary and this court will not, at this time, grant such a request. *Meeropol*, 790 F.2d at 960–61.

## VII. Vaughn Index

■ Finally, in her first motion for summary judgment, Schrecker requested that the court require the FBI to submit *Vaughn* indices for materials referred to other agencies. The defendant implied that it complied with this request by submitting declarations from the CIA and the Department of the Army, as an attachment to its second motion for summary judgment. In her second motion for summary judgment, Schrecker asserts that these affidavits are insufficient and that *Vaughn* indices or declarations from a number of referral agencies have not been submitted. Subsequently, defendant submitted a declaration from the Department of Veterans Affairs regarding two referred documents. In addition, defendant revealed that documents referred to the National Labor Relations Board and the Criminal Division of the U.S. Department of Justice would be addressed by separate declarations not yet submitted. This new information from the defendant still does not account for all the agencies to which plaintiff asserts referrals were made, including the INS, IRS, Navy, State, Selective Service and HHS. At most, defendant states that "[a]ll other referred documents and/or information at issue in this matter were released in full by the respective agencies or addressed in the Steward Declaration" and that therefore "no dec-

---

4. This information was supplied to the court in the Hodes declaration as part of the second summary judgment track. This court notes that the plaintiff's challenge regarding adequacy of the search arose in the first track.

laration[s] are needed by these agencies for this material." (Hodes Decl., ¶ 7).

As evident by defendant's admission that certain agencies have yet to process referral documents, at least several declarations and/or indices must be completed before the court can begin to assess the validity of defendant's withholdings. Defendant's failure to seriously address plaintiff's assertion regarding the aforementioned agencies leaves this court with insufficient information to evaluate defendant's claim. As such, the court denies judgment on all referral documents until the defendant reprocesses all documents, as previously discussed. The court strongly suggests that the defendant give serious consideration to challenges in Schrecker's Pleadings so as to minimize further dispute.

## VIII. Conclusion

For the reasons set forth herein, defendant's motions for summary judgment will be denied. Plaintiff's cross-motions for summary judgment will be granted in part and denied in part.

A separate order shall issue this date.