Ellen W. SCHRECKER, Plaintiff,

v.

**UNITED STATES DEP'T OF JUSTICE, Defendant.**

**No. C.A. 95–0026(RCL).**

United States District Court, District of Columbia.

Nov. 29, 1999.

James H. Lesar, Washington, DC, for Plaintiff.

Wilma Lewis, Mark E. Nagle, Suzanne C. Nyland, United States Attorney's Office, United States Dept. of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter returns to the Court on plaintiff Ellen W. Schrecker's and defendant United States Department of Justice's third set of cross-motions for summary judgment. Based upon the parties' motions in support of and in opposition to these motions, the entire record thereto, and the applicable law, plaintiff's motion will be denied and defendant's motion will be granted.

## I. Background

Plaintiff Ellen Schrecker, a history professor and author, commenced this action under the Freedom of Information Act, 5 U.S.C. § 552, ("FOIA"), seeking documents relating to Gerhart Eisler and Clinton Jencks, who were subjects of Justice Department investigations during the McCarthy era. Eisler was a German communist who lived in the United States from the late 1930s or early 1940s until 1949. Jencks was an official of the Mine, Mill and Smelter Workers International Union in New Mexico who was indicted by the Justice Department for violations of the Taft–Hartley Act.

A detailed history of this litigation appears in this Court's prior opinion. *See Schrecker v. United States Dep't of Justice,* 14 F.Supp.2d 111, 113 (D.D.C.1998)(denying defendant's motion for summary judgment; granting and denying in part plaintiff's motion for summary judgment). After two rounds of briefing on dispositive motions, this Court ordered the defendant to reprocess all information withheld in response to plaintiff's FOIA request. Subsequently, on August 28, 1998, pursuant to a Stipulation and Scheduling Order, the parties agreed that after reprocessing was completed, and due to the volume of documents involved in this case, plaintiff would select 100 sample pages for which defendant would prepare *Vaughn* indices. Accordingly, the present chapter in this protracted litigation concerns whether the defendant's withholdings from these 100 sample pages are properly justified.

## II. The Freedom of Information Act & Standard of Review

The Freedom of Information Act, 5 U.S.C. § 552, as amended by the Freedom

of Information Reform Act of 1986, §§ 1801–04 of Pub.L. No. 99–570, 100 Stat. 3207, 3207–48 (1986), provides citizens a statutory right of access to government information. As its basic premise, the Act establishes that government agency records should be accessible to the public. Accordingly, the FOIA instructs government agencies to disclose agency records, unless the requested records fall within one of the Act's nine enumerated exemptions. In this case, the defendant has justified nondisclosure under six of the nine exemptions. The Court will address plaintiff's challenges to defendant's withholdings by exemption group.

In a FOIA action, summary judgment is appropriate when the pleadings, together with the declarations, demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 313 (D.C.Cir.1988) (mere conflict in affidavits insufficient to preclude summary judgment); *Weisberg v. Department of Justice*, 627 F.2d 365, 368 (D.C.Cir.1980). FOIA matters are reviewed de novo, and the agency bears the burden of justifying nondisclosure. *See* 5 U.S.C. § 552(a)(4)(B); *Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

▮ To sustain their burden of proof, agencies may rely on the declarations of their officials. *Oglesby v. Department of the Army*, 920 F.2d 57, 68 (D.C.Cir.1990). Indeed, courts accord agency declarations a presumption of expertise, *Pharmaceutical Manu. Ass'n v. Weinberger*, 411 F.Supp. 576, 578 (D.D.C.1978), provided the affidavits are clear, specific and adequately detailed, and set forth the reasons for nondisclosure in a non-conclusory manner. These declarations must be submitted in good faith. *See Hayden v. NSA*,

608 F.2d 1381, 1387 (D.C.Cir.1979). Once a court determines that an agency's affidavits are sufficient, the court need not conduct any further inquiry into their veracity. *Id.* Accordingly, to preclude summary judgment, a plaintiff must demonstrate that a claimed exemption has been improperly asserted.

▮ When an agency declines to produce requested documents, it must demonstrate that the claimed exemption applies. 5 U.S.C. § 552(a)(4)(B). To that end, agencies must submit *Vaughn* indices that adequately describe the withheld information and explain how the particular exemption is relevant. *Founding Church of Scientology v. Bell*, 603 F.2d 945 (D.C.Cir. 1979); *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973). Any reasonably segregable portions of requested records must be disclosed once the exempt portions have been redacted, *Oglesby v. United States Dep't of the Army*, 79 F.3d 1172, 1176 (D.C.Cir.1996). In addition, district courts are required to consider segregability issues even when the parties have not specifically raised such claims. *Trans–Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022, 1027 (D.C.Cir. 1999).

**A. Exemption 1**

Under Exemption 1, agencies may withhold information that is "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) [is] in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Classification of such materials is currently controlled by Executive Order 12958. Summary judgment is proper under Exemption 1 "only if (1) the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed, and (2) the affidavits are neither controverted by contrary

record evidence nor impugned by bad faith on the part of the agency." *Canning v. United States Dep't of Justice,* 848 F.Supp. 1037, 1049(citing *King v. United States Dep't of Justice,* 830 F.2d 210, 217 (D.C.Cir.1987)).

Agencies satisfy this burden by submitting affidavits that describe the withheld materials and explain how such materials fall within the claimed exemption. *King,* 830 F.2d at 217. Courts attribute substantial weight to agency affidavits concerning the classified status of contested records. *Salisbury v. United States,* 690 F.2d 966, 970 (D.C.Cir.1982) ("Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [sic] might occur as a result of public disclosure."). Thus, if an agency's declarations are reasonably specific and appear to have been submitted in good faith, courts should not "conduct a detailed inquiry into whether it agrees with the agency's opinions." *Halperin v. CIA,* 629 F.2d 144, 148 (D.C.Cir.1980).

Plaintiff presents a host of challenges to the defendant's Exemption 1 withholdings of classified documents that are more than 25 years old. First, plaintiff claims that Executive Order 12958 mandates that the FBI must release such older documents because they do not meet the prerequisites for exemption from declassification. Specifically, plaintiff takes issue with the memorandum to the President submitted by Attorney General Janet Reno that seeks exemption for FBI administrative and investigatory records. She claims that the memorandum fails to describe the "specific file series of records for which a review or assessment has determined that the information within those files series almost invariably falls within one or more of the exemption categories ... and which the agency proposes to exempt from automatic declassification." *Id.* at § 3.4(c). In addition, plaintiff asserts that no review or assessment ever took place and that the proffered explanations inadequately describe a nexus with national security concerns. Moreover, plaintiff claims that the memorandum is procedurally flawed, as various markings, such as the date for declassification, do not appear on each page of the document. Finally, with respect to withholdings by Army Intelligence and the Defense Intelligence Agency ("DIA"), plaintiff argues that these agencies have not undertaken sufficient efforts to determine whether sources whose identities have been withheld are still alive.

The Court, however, finds that defendant's Exemption 1 withholdings are justified. First, to the extent that plaintiff's arguments rely on the automatic declassification provisions set forth in Executive Order 12958, those challenges must fail, as those provisions do not take effect until April 17, 2000. *See* Exec. Order No. 12958, 60 Fed.Reg. 19825, § 3.4(a) (April 17, 1995). Although the plaintiff suggests that the Court can choose to ignore the fact that such provisions are without legal effect until April 17, 2000, and prospectively order the defendant to disclose them, this Court declines to do so. Rather, the only question properly before the Court at the present time is whether defendant's withholdings are justified under existing law.

■ Having reviewed the affidavits and indices pertaining to nondisclosures under Exemption 1, the Court finds them to be reasonably detailed and submitted in good faith. *Halperin,* 629 F.2d at 148. More importantly, the Court finds that defendant's submissions adequately explain a nexus with national security concerns as required under Exemption 1. The indices describe the precise types of information withheld—classified information regarding intelligence sources and methods, foreign relations, and cryptologic systems. *Voinche v. FBI,* 940 F.Supp. 323, 327 (D.D.C.1996); *Linn v. United States Dep't of Justice,* No. 92–1406, 1995 WL 631847, *26 (D.D.C. Aug.22, 1995); *Allen v. Department of Defense,* 658 F.Supp. 15, 19–21 (D.D.C.1986). In addition, a review of the redactions demonstrates that deletions

were made as narrowly as possible, thereby permitting the disclosure of segregable information wherever possible. Accordingly, because the defendant's submissions provide the Court with sufficient detail describing how the withheld documents fall within the scope of Exemption 1, the defendant is entitled to summary judgment on its nondisclosures under this provision. *King*, 830 F.2d at 217.

Similarly, plaintiff's assertion that two pages–V–37 and V–38–were not properly classified also fails. Having examined the first page of the contested document that contains these pages (Exh. A to Third Decl. of Scott Hodes), the Court finds that all required markings appear on the face of the document. Thus, plaintiff's claims regarding assorted procedural deficiencies are without merit.

Plaintiff repeats her challenge to the defendant's withholding of documents that are over 25 years old under Exemptions 1, as well as Exemptions 3, 6, 7(C) and 7(D). She speculates that these older documents contain information about people who may be deceased. Plaintiff again asks the Court to order the FBI to check additional sources to determine whether it is withholding information-pertaining to individuals who are deceased. She maintains that defendant has not adequately detailed its efforts to determine the status of these individuals. But this Court has previously rejected this challenge, having found that the defendant has sufficiently researched and considered the age of individuals who might be deceased in order to determine whether to release relevant information. *See Schrecker*, 14 F.Supp.2d at 117 (citing *Reiter v. Drug Enforcement Admin.*, No. 97–5246, 1998 WL 202247, *1 (D.D.C. March 3, 1998) and *Allen v. Defendant of Defense*, 658 F.Supp. 15, 20 (D.D.C.1986)). Nothing new appears in plaintiff's resurrected argument that persuades the Court to reconsider its previous ruling. Rather,

for the reasons set forth previously, *Schrecker*, 14 F.Supp.2d at 117–118, and upon reviewing the defendant's most recent submissions pertaining to the 100 sample pages, plaintiff's request will be denied and defendant is entitled to summary judgment with respect to all documents challenged on this basis.[1]

## B. Exemption 2

■ Exemption 2 exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Specifically, it protects agency matters so routine or trivial that they could not be the subject a genuine and significant public interest. *Department of the Air Force v. Rose*, 425 U.S. 352, 369, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). Courts have interpreted Exemption 2 to comprise two different categories. The first category covers trivial administrative data, or so-called "Low 2 exemptions," which include file numbers, mail routing stamps, data processing notations and other administrative markings. *Lesar v. Department of Justice*, 636 F.2d 472, 485 (D.C.Cir.1980). The second category, "high 2," consists of predominately internal documents the disclosure of which would likely circumvent agency regulations and statutes. *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1074 (D.C.Cir.1981) (*en banc*). For Exemption 2 to apply, "the material withheld should fall within the terms of the statutory language as a personnel rule or internal practice of the agency." *Founding Church of Scientology v. Smith*, 721 F.2d 828, 830–31 n. 4 (D.C.Cir.1983). "Exemption is automatic if the material relates to trivial administrative matters of no genuine public interest." *Id.* By contrast, where withholding frustrates a legitimate public interest, the material must be disclosed unless the government demon-

1. Likewise, plaintiff's challenges on this same basis to withholdings under Exemption 3, 6, 7(C) and 7(D) also fail.

strates that disclosure would risk circumvention of lawful agency regulation. *Id.*

 Plaintiff protests defendant's invocation of Exemption 2 to withhold various file numbers, source code numbers and geographical indicators relating to confidential informants. She also maintains that the DIA improperly withheld the identity of the governmental unit that submitted a particular document (FBIHQ 100–3250–209) to the FBI London Legat. Plaintiff's first challenge overlooks that it is well-established that Exemption 2 shields from disclosure symbols, codes or other identifying data that would reveal the identities of confidential informants. *Lesar*, 636 F.2d at 486; *Coleman v. FBI*, 13 F.Supp.2d 75, 78 (D.D.C.1998). In addition, as the accompanying affidavit explains, the source codes and symbols are assigned in such a specific manner that no portion of the code is reasonably segregable. *Cf. Trans–Pacific*, 177 F.3d at 1026 (finding that portion of HTS numbers contained reasonably segregable numbers). Similarly, the DIA's redaction of the name of the office that relayed information to the FBI is also proper under Exemption 2. Disclosure of this office could risk circumvention of the ability of the DIA to collect or relay intelligence information. *Crooker*, 670 F.2d at 1074. Moreover, most of the substance of the document has already been released to the plaintiff, so the redactions appear to have been drawn as narrowly as possible to permit the release of segregable information. Accordingly, as the Court finds that the claimed Exemption 2 withholdings are proper, the defendant is entitled to summary judgment.

## C. Exemption 3

Exemption 3 covers information that is "specifically exempted from disclosure by statute, provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be with-

held." 5 U.S.C. § 552(b)(3). Records may be withheld under this exemption only if the federal statute at issue "specifically exempts matters from disclosure." *Reporters Comm. for Freedom of the Press v. United States Dep't of Justice*, 816 F.2d 730, 734 (D.C.Cir.), *modified on other grounds*, 831 F.2d 1124 (D.C.Cir.1987), *rev'd on other grounds*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). That is, "the statute must 'explicitly deal with public disclosure.'" *Id.* at 736, 109 S.Ct. 1468. Once this threshold requirement is met, an agency must then establish that the records are covered by the particular nondisclosure statute at issue.

Defendant has invoked Exemption 3 in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure, which preserves the secrecy of grand jury materials Fed.R.Crim.P. 6(e). In addition, Defendant has withheld a third party's tax return information under Section 6103(b)(2)(A) of the Internal Revenue Code. 26 U.S.C. § 6103 (West Supp.1998). As plaintiff makes no challenges to these withholdings, and because the Court finds that the redactions are narrowly drawn to shield the identity and address of the witnesses and third parties, as well as the grand jury testimony itself, Exemption 3 is properly claimed and the defendant is entitled to summary judgment. *Fund for Constitutional Gov't v. National Archives & Records Serv.*, 656 F.2d 856, 857 (D.C.Cir.1981); *Tax Analysts v. IRS*, 117 F.3d 607, 611 (C.A.D.C.1997); *Stebbins v. Sullivan*, No. 90–5361, 1992 WL 174542, 1991 U.S. Dist. LEXIS 17729, at *1 (D.C.Cir. July 22, 1992).

Defendant also invokes Exemption 3 in conjunction with the National Security Act, 50 U.S.C. § 403–3(c)(6), which commands the Director of Central Intelligence to protect intelligence sources and methods from unauthorized disclosure. *See* 50 U.S.C. § 403–3(c)(6) ("In the Director's capacity as head of the Intelligence Community, the Director shall ... protect intelligence sources and methods from unauthorized

disclosure."). *Central Intelligence Agency v. Sims,* 471 U.S. 159, 167, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985); *Blazy v. Tenet,* 979 F.Supp. 10, 23 (D.D.C.1997); *Pfeiffer v. CIA,* 721 F.Supp. 337, 341–42 (D.D.C. 1989).

█ Plaintiff contests the application of Exemption 3 on two bases. First, plaintiff challenges the sufficiency of the affidavits, noting that the CIA has failed to indicate whether the protected sources are dead or alive. In addition, she argues that the National Security Act does not give the Director the authority to withhold the identity of intelligence sources who are deceased. This Court disagrees. First, Exemption 3 contains no language that suggests that privacy concerns are relevant to the applicability of this exemption. Indeed, where Congress intended to bring privacy concerns into FOIA analysis, it did so in plain terms. *See* 5 U.S.C. § 552(b)(6) & 7(C). Nor does the relevant provision of the National Security Act give the CIA Director the discretion to disclosure such sources on any basis, let alone whether such sources may be deceased. Rather, the Act sweeps more broadly, protecting without qualification "intelligence sources and methods." 50 U.S.C. § 403–3(b)(6). As such, plaintiff's attempt to inject privacy concerns into Exemption 3 analysis is misguided. Moreover, having reviewed the affidavits, indices and redactions, the Court is satisfied that defendant's withholdings under this exemption are proper. The affidavit and index plainly describes that disclosure of the withheld documents would reveal classified confidential source information. (McNair Decl. ¶ 8(b); ¶ 10). In addition, where possible, redacted versions of documents were released to plaintiff, where it appears that only the name and other specific identifying information was withheld. (*Id.* at ¶ 10.) Thus, finding that the exemption is properly justified, defendant is entitled to summary judgment.

## D. Exemption 6

Exemption 6 shields information contained in "personnel and medical files and similar files," when disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (1994 & Supp. II 1996). As a preliminary matter, to qualify for this exemption, the information must be contained in personnel, medical or "similar files." 5 U.S.C. § 552(b)(6); *see also United States Dep't of State v. Washington Post Co.,* 456 U.S. 595, 599–603, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982) (interpreting "similar files" broadly and remarking that protection of an individual's privacy should not turn on the label of the file ). Once this threshold requirement is met, all information that applies to a specific individual will be protected under Exemption 6, if disclosure would clearly constitute an unwarranted invasion of privacy. *Id.*

Exemption 6 requires that the relevant privacy interest be balanced against the public's interest in disclosure. *Reporters Comm.* 489 U.S. at 772, 109 S.Ct. 1468. In this regard, the public interest depends upon the nature of the requested document and its relation to the public interest in general, not some particularized need of the plaintiff. *Id.* Here, in both instances, the Court finds that substantial and tangible privacy interests would be implicated by the disclosure of these individuals' names, appearing as they do in reports that recount illegal activity to federal law enforcement and intelligence authorities. While an individual's privacy interests diminish with his death, "certain reputational interests and family-related privacy interests survive death." *Campbell v. United States Dep't of Justice,* 164 F.3d 20, 33 (D.C.Cir.1998) (stating that a court balancing the public's interest in disclosure against an individual's privacy interest must take into account whether the individual may be deceased). Accordingly, these privacy interests must be weighed against any identifiable public in-

terest in disclosure of the redacted portion of this document.

■ Here, plaintiff challenges the defendant's application of Exemption 6 in two instances. First, plaintiff contests the DIA's redaction of names and identifying information pertaining to persons who provided information to U.S. intelligence sources. Second, plaintiff contests the National Labor Relations Board's ("NLRB") application of Exemption 6 to the name of a public official who provided the FBI information about Jencks. Thus, the Court must consider whether, at the margin, any public interest is served by the disclosure of these names. Aside from her own personal interest in disclosure, plaintiff has identified no public interest in the disclosure of these names. In light of the de minimis redactions which disclose most of the substantive information in these documents, the Court finds that no public interest tips the scales in favor of further disclosure. Accordingly, defendant is entitled to summary judgment with respect to its Exemption 6 withholdings.

### E. Exemption 7(C)

■ Exemption 7(C) shields from disclosure law enforcement information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy" if released. 5 U.S.C. § 552(b)(7)(C). To invoke this subsection, an agency must first identify and evaluate the magnitude of the privacy interest implicated by disclosure. Next, the agency must balance this privacy interest against the magnitude of any public interest served by disclosure. *Reporters Comm.,* 489 U.S. at 776, 109 S.Ct. 1468; *Stern v. FBI,* 737 F.2d 84, 91–92 (D.C.Cir.1984).

■ Plaintiff contests the redaction of certain FBI agent's names, arguing that any privacy interest is waived because a former FBI agent, Robert Lamphere, in his book, *The FBI–KGB War,* divulges the identity of some former agents who investigated Eisler. In addition, plaintiff con-

tests the Immigration and Naturalization Service's ("INS") withholding of the names of persons who cooperated with law enforcement investigations. First, plaintiff's argument regarding the Lamphere book lacks merit, as she has pointed to no evidence, aside from speculation, that the names withheld are identified in the Lamphere book, or have otherwise been publicly revealed. Nor does she identify any public interest in the disclosure of these individuals' names-aside from her own personal curiosity-that is sufficient to outweigh their privacy interests. Plaintiff's challenges to the INS withholdings also fail, as the names of third parties appearing in law enforcement records are "the very withholdings Exemption 7(C) is designed to protect absent some significantly compelling countervailing public interest in disclosure." *SafeCard Serv. v. SEC,* 926 F.2d 1197, 1206 (D.C.Cir.1991); *Coleman,* 13 F.Supp.2d at 78. Moreover, plaintiff does not point to any compelling public interest that weighs in favor of disclosure. *King v. United States Dep't of Justice,* 586 F.Supp. 286, 294 (D.D.C.1983). Lastly, the redactions appear to have been narrowly drawn to withhold only the name and identifying information of such individuals. Accordingly, the defendant is entitled to summary judgment on its Exemption 7(C) withholdings.

### F. Exemption 7(D)

Exemption 7(D) protects records "compiled for law enforcement purposes ... by criminal law enforcement authority in the course of a criminal investigation" where the release of such records "could reasonably be expected to disclose" the identity of or information provided by a confidential source. *See* 5 U.S.C. § 552(b)(7)(D). A source is confidential for purposes of this exemption if the source " 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance can be reasonably inferred,' [or] if the source furnished information with the understanding that the FBI would not divulge the communication

except to the extent...necessary for law enforcement purposes." *United States Dep't of Justice v. Landano*, 508 U.S. 165, 171–174, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993)(quoting S.Rep.No. 1200, 93rd Cong.,2d Sess. 13 (1974), 1974 U.S.C.C.A.N. 6285, 6291). This case-by-case inquiry focuses upon "whether the particular source spoke with an understanding that the communication would remain confidential." *Landano*, 508 U.S. at 173, 113 S.Ct. 2014.

■ Plaintiff challenges the redactions of source symbols and other identifying information pertaining to FBI informants, arguing that the defendant's affidavits and *Vaughn* indices lack sufficient evidence of express confidentiality agreements. Plaintiff further maintains that there is insufficient evidence to warrant withholdings in document V–59, based upon implied confidentiality, because, in her opinion, contempt of Congress and passport fraud are not serious enough crimes to warrant the inference that confidentiality was promised in order to elicit information. *United States Dep't of Justice v. Landano*, 508 U.S. 165, 171, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). This Court does not share this view. Upon review of the extensive affidavits and indices regarding the confidential source information redacted under Exemption 7(D), the Court finds that the defendant has more than adequately justified these withholdings. Specifically, the affidavits explain that the redacted information pertains to individuals who provided information only with the express understanding that their identities and information would be protected. (Second Decl. of Scott Hodes, ¶¶ 51–59). This assertion is supported by a review of the documents, which show that redactions were drawn as narrowly as possible and no reasonably segregable information appears to have been withheld. The affidavit further explains that the information provided by these individuals is "singular in nature and, if released, could reveal the informant's identity." (*Id.* ¶ 52.) In addition,

the indices also support the claimed exemption, noting that the symbols pertain to "informants reporting to the FBI on a regular basis" who have been assigned these numbers for the very purpose of protecting their identity.

With respect to plaintiff's assertions that passport fraud and contempt of Congress are not serious enough crimes to warrant the defendant's claimed exemption based upon implied confidentiality, this Court disagrees. Simply put, the affidavit contravenes plaintiff's suggestion that the source's relationship to the crime was insufficient for purposes of 7(D). *Landano*, 508 U.S. at 179, 113 S.Ct. 2014. Indeed, the affidavit explains that the information reports facts known only by those involved in the same criminal enterprise as Eisler. (Second Decl of Scott Hodes, ¶ 57.). As for the "nature of the crime," the Court disagrees with plaintiff's rather cavalier suggestion that the crimes of passport fraud and contempt of Congress do not merit an inference of implied confidentiality. Rather, the Court finds that disclosure of this person's identity would likely subject him to potential reprisal from others and embarrassment. Accordingly, the defendant is entitled to summary judgment with respect to its 7(D) withholdings.

### G. Miscellaneous Claims

Plaintiff attempts to create two minor issues with respect to reprocessing, neither of which succeeds. First, with respect to documents referred by the Executive Office of the United States Attorneys ("EOUSA"), plaintiff complains that the documents in the *Vaughn* index do not comprise all of the records referred to the EOUSA by the FBI. She maintains that because the EOUSA has disclosed most of the information that was originally indexed, any documents withheld after reprocessing must be reprocessed yet again. This argument is flawed. Plaintiff appears to have forgotten that she agreed to the following: "[P]laintiff's counsel shall provide defendant's counsel with a list of sam-

ple documents to be *Vaughned* in this case. The documents listed shall total no more than 100 pages, and defendant will not process any documents in excess of that number." Stipulation and Scheduling Order, Aug. 28, 1998. Thus, plaintiff expressly agreed that not all of the reprocessed documents would be *Vaughned*. In light of the this stipulation, the Court fails to comprehend plaintiff's apparent surprise that all reprocessed documents are also not *Vaughned*. Thus, having reviewed the supplemental affidavit, which explains that the remaining documents have been reprocessed and that they were not selected as part of plaintiff's 100 sample documents, the Court finds that there is no genuine issue of material fact with respect to these documents.

Plaintiff also asserts that the FBI has not properly documented its search for ticklers, which are carbon copies. This Court had previously ordered the defendant to clarify whether the investigations of Jencks and Eisler were classified only as "Internal Security" investigations or whether they were also considered "Smith Act" investigations, as previously represented by the defendant. *See Schrecker*, 14 F.Supp.2d at 119. As the FBI affidavit explains, if the investigations were classified only as Internal Security investigations, no ticker files would exist, as retention of these documents was not required. (Second Decl. of Scott Hodes. ¶¶ 11–12; Exh. J.) If these investigations were classified as Smith Act investigations, however, the affidavit and exhibit suggest that these files might have been retained.

To clarify this issue, defendant has filed a supplemental memorandum and declaration. First, the declaration explains that the FBI has already conducted a search and review of any original documents that would be responsive to plaintiff's request, as the original documents (of which "ticklers" are copies) are indexed in the Central Records System ("CRS"). (Fourth Decl. of Scott Hodes ¶ 5). In addition, the submission explains that the FBI has no rec-

ord of any FBI memorandum addressing retention of ticklers in Smith Act cases after 1955. It further explains that after 1977, tickler retention policy was left to the discretion of individual headquarters supervisors. (Fourth Decl. of Scott Hodes, ¶ 6.). In light of these explanations, the Court finds that the FBI search was adequate. *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27 n. 3 (D.C.Cir.1998) ("[T]he scope of the FBI's search for ticklers need only be as broad as is reasonable in light of the evidence compelling such a search."); *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1351 (D.C.Cir.1983) (finding that to determine the adequacy of the search, courts must apply a "reasonableness" test). Plaintiff has pointed to no evidence whatsoever that would lead the Court to believe a further search would be fruitful. *Campbell*, 164 F.3d at 28–29. Accordingly, she has failed to establish a sufficient predicate for justifying a further search for these tickler files. *Id.* Based upon defendant's supplemental submission, the only way that ticklers responsive to plaintiff's request would even exist today would be if an individual FBI headquarters supervisor determined that it was somehow "practical or efficient" to retain copies of Smith Act documents more than 30 years old. (Fourth Decl. of Scott Hodes, Exh. A). Given this highly unlikely scenario, as well as the dearth of evidence suggesting that any supervisor actually retained such files, the Court is satisfied that the FBI's search for ticklers was adequate and that defendant is entitled to summary judgment.

A separate order shall issue this date.