Gail G. BILLINGTON, Appellant,

v.

U.S. DEPARTMENT OF
JUSTICE, Appellee.

No. 99–5402.

United States Court of Appeals,
District of Columbia Circuit.

Submitted Oct. 16, 2000.

Decided Dec. 1, 2000.

Gail G. Billington, appearing pro se, was on the briefs for appellant.

Wilma A. Lewis, U.S. Attorney, R. Craig Lawrence and Scott S. Harris, Assistant U.S. Attorneys, were on the brief for appellee.

Before: WILLIAMS, RANDOLPH, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Gail Billington's efforts to pry loose information from the Department of Justice are chronicled in the two lower court opinions that preceded this appeal. *See Billington v. Department of Justice,* 11 F.Supp.2d 45 (D.D.C.1998) (*Billington I*), and *Billington v. Department of Justice,* 69 F.Supp.2d 128 (D.D.C.1999) (*Billington II*). In brief, Gail Billington and her husband Michael were members of the National Caucus of Labor Committees (NCLC), a political organization founded by Lyndon LaRouche in the 1960s. Mr. Billington and other members were prosecuted and convicted in the 1980s for fund-raising irregularities. In 1991 and 1992, Gail Billington filed several Freedom of Information Act (FOIA) requests with the Federal Bureau of Investigation seeking information relating to the federal and state investigations of the NCLC. She believes this information will exculpate her husband and other convicted NCLC mem-

bers. The FBI withheld some responsive documents in full and released others in redacted form, citing exemptions 1, 2, 3, 5, 6, 7(C), 7(D), and 7(E) to FOIA. *See* 5 U.S.C. § 552(b)(1)-(7). Billington challenged several of those claims of exemption in this suit.[1]

The district court divided the case into two stages, the first to consider all documents but those contained in four FBI "Internal Security" files and the second to consider documents from those four files. In *Billington I*, the court upheld all of the government's withholdings and redactions under exemptions 1, 2, 3, and 5 to FOIA. It upheld most of the government's exemption 7(C) withholdings, but ordered the government to reevaluate withholdings relating to a deceased individual and to information that had previously been disclosed to another FOIA requester. The court also upheld most of the government's exemption 7(D) withholdings, but ordered the FBI to provide a supplemental affidavit justifying redactions concerning entities that received, rather than provided, information on a confidential basis. The court also found a State Department declaration justifying exemption 6 withholdings insufficient and ordered an *in camera* review of the documents. *See* 11 F.Supp.2d 45 (D.D.C.1998).

In *Billington II*, the district court upheld the government's withholdings under exemptions 1, 2, 7(C), 7(D), and 7(E), including some withholdings it had questioned in *Billington I*. *See* 69 F.Supp.2d 128 (D.D.C.1999).

On appeal, Billington challenges certain of the government's exemption 6,[2] 7(C), 7(D), and 7(E)[3] withholdings. She also challenges the sufficiency of one Internal Revenue Service declaration and the propriety of the district court reviewing another *in camera*. We have nothing to add to the district court's sound reasoning with respect to the government's withholding parts or all of documents under exemptions 7(C) and 7(E), and therefore reject this portion of Billington's appeal substantially for the reasons given by the district court. Of the remaining issues we reverse and remand (with one exception, *see* note 5 *infra*) for the reasons given in the balance of this opinion.

## I.

FOIA requires the government to disclose, upon request, broad classes of documents identified in 5 U.S.C. § 552(a). It exempts from disclosure nine categories of documents described in 5 U.S.C. § 552(b). The government is entitled to summary judgment if no material facts are in dispute and if it demonstrates either that withheld or redacted documents are not required to be disclosed under § 552(a) or

---

1. Billington is also a plaintiff in the NCLC's civil rights suit against the Attorney General and the Director of the FBI in the Southern District of New York. Several of Billington's claims in the instant case relate to redactions on documents the government has filed under seal in that case.

2. Exemption 6 permits the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *See* 5 U.S.C. § 552(b)(6).

3. Exemption 7 permits the government to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information * * * (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law * * *." *See* 5 U.S.C. § 552(b)(7).

are exempt from disclosure under § 552(b). *See, e.g., Computer Professionals for Social Responsibility v. United States Secret Serv.,* 72 F.3d 897, 902 (D.C.Cir.1996); *Gallant v. NLRB,* 26 F.3d 168, 171 (D.C.Cir.1994). We review the district court's grant of summary judgment *de novo. See Spirko v. United States Postal Serv.,* 147 F.3d 992, 998 (D.C.Cir.1998); *Nation Magazine v. United States Customs Serv.,* 71 F.3d 885, 889 (D.C.Cir.1995).

## A.

▉ The government withheld or redacted numerous documents under exemption 7(D), which protects law enforcement information obtained from sources who received an express or implied assurance of confidentiality. *See Campbell v. United States Dep't of Justice,* 164 F.3d 20, 34 (D.C.Cir.1998). The question posed in exemption 7(D) cases "is not whether the requested *document* is of the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential." *United States Dep't of Justice v. Landano,* 508 U.S. 165, 172, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). *Landano* rejected the government's suggestion that assurances of confidentiality are "inherently implicit" when somebody provides information to a federal law enforcement agency. *See* 508 U.S. at 174–78, 113 S.Ct. 2014.

In this case, the government's justifications for withholding or redacting certain documents under exemption 7(D) fall short of the particularized justification *Landano* requires. The government's declarations do not sufficiently detail certain express assurances of confidentiality and do not adequately explain implied assurances of confidentiality for information received after 1977.

The government employed a coding system to correlate claims of exemption on responsive documents to the justifications in its declarations. It identified seven ex-

emption 7(D) categories using the notations (b)(7)(D)–1, (b)(7)(D)–2, and so on through (b)(7)(D)–7. *See* Joint Appendix 43–44. Billington challenges four of these categories: (b)(7)(D)–3 ("name and information provided by source with an expressed promise of confidentiality"), (b)(7)(D)–4 ("name, identifying data and information provided with an implied promise of confidentiality"), (b)(7)(D)–5 ("information provided by non-federal law enforcement agencies under an implied promise of confidentiality"), and (b)(7)(D)–7 ("name of a foreign government agency who has an expressed promise of confidentiality"). *See* Joint Appendix 43–44.

The government's declarations justifying exemptions coded (b)(7)(D)–3 do not "present 'probative evidence that the source did in fact receive an express grant of confidentiality'." *See Campbell v. United States Dep't of Justice,* 164 F.3d 20, 34 (D.C.Cir.1998). The FBI's August 29, 1997, declarations supporting the (b)(7)(D)–3 redactions state that "this information was received with the explicit understanding that it would be held in the strictest confidence. It is obvious from the released information that these sources warrant confidentiality." Joint Appendix 55. This may be obvious to the affiant, but it is not obvious to us. This bald assertion that express assurances were given amounts to little more than recitation of the statutory standard, which we have held is insufficient. *See Campbell,* 164 F.3d at 30 ("the affidavits must show, with reasonable specificity, why the documents fall within the exemption. The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping."); *King v. United States Dep't of Justice,* 830 F.2d 210, 219 (D.C.Cir.1987). The declaration goes on to state that "the manner in which the FBI actually obtains information from these sources is also demonstrative of the express promise of confidentiality under which it was received. The information is

often received at times and at locations which guarantee the contact will not be noticed." Joint Appendix 56. The circumstances under which the FBI receives information might support a finding of an implied assurance of confidentiality, but they do not demonstrate the oral or written act required for an express assurance of confidentiality. *Cf. Landano,* 508 U.S. at 179, 113 S.Ct. 2014 (suggesting "generic circumstances in which an implied assurance of confidentiality fairly can be inferred").

■ The FBI's March 11, 1998, declaration at least avers that evidence of express assurances exists, recorded either on the document containing the information or in some other place. Such a memorialization made contemporaneously with a report summarizing information received from a confidential source certainly suffices. *See Campbell,* 164 F.3d at 34. The trouble is that several of the contested documents do not contain the notations mentioned in the March 11 declaration.[4] The giving of express assurances may well be recorded elsewhere, but the mere recitation of that fact does not provide "detailed and specific information demonstrating 'that material withheld is logically within the domain of the exemption claimed'." *Campbell,* 164 F.3d at 30. At the very least the government must indicate where these assurances of confidentiality are memorialized. In light of these deficiencies, we reverse the grant of summary judgment as to documents that do not reveal an express assurance of confidentiality on their face and remand to allow the government to make a stronger showing.[5]

■■ Billington also attacks redactions based on an implied assurance of confidentiality coded (b)(7)(D)–4 and (b)(7)(D)–5. The character of the crime and the source's relation to it may support an inference that the source provided information under an implied assurance of confidentiality. *See Landano,* 508 U.S. at 179, 113 S.Ct. 2014. The FBI's March 11, 1998, declaration and attached exhibits indicate that law enforcement sources would not have cooperated absent an implied assurance of confidentiality. They amply document the NCLC's violent tendencies and appetite for vengeance. *See* Joint Appendix Under Seal 41–43 and Exhibit 1.

The government's documentation primarily concerns the period before 1978. As Billington points out, the FBI itself recognized that the NCLC in the late 1970s publicly disavowed violence in favor of seeking change through the political process. Two FBI documents dated July and September 1977 report the change in organizational focus, note the absence of recent violent incidents associated with the NCLC, and recommend closure of investigations into the NCLC. According to Billington, the FBI's recognition of a reincarnated NCLC indicates that FBI sources after 1977 might have cooperated without an implied assurance of confidentiality.

■ Implied confidentiality analysis proceeds from the perspective of an informant, not the law enforcement agency as Billington's argument assumes. However, the government's perceptions are relevant insofar as they reflect changes in the NCLC that were perceptible to informants. Several of the redactions for which the government invoked an implied assurance of confidentiality contain information provided to the FBI in the 1980s, well after the NCLC underwent a public metamorphosis. As a result, we cannot be certain that the circumstances suggesting an implied assurance of confidentiality ob-

---

4. Billington has withdrawn her challenge to documents that state a source received an express assurance of confidentiality. *See* Appellant's Reply Brief at 16.

5. We have reviewed and now reject Billington's objections to the government's (b)(7)(D)–7 (express assurances of confidentiality to foreign governments) withholdings. The FBI's March 11, 1998, and October 29, 1998, declarations adequately document the giving of express assurances of confidentiality to the relevant foreign agencies.

tained in the 1980s.[6] A remand is therefore appropriate to require the government to identify or supply evidence that informants predicated their assistance on an implied assurance of confidentiality after 1977.[7]

### B.

■■■ Billington also claims that declarations provided by the Department of State and the Internal Revenue Service are inadequate because they contain insufficient segregability analysis. We agree. Under FOIA, "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). This segregability requirement limits claims of exemption to discrete units of information; to withhold an entire document, all units of information in that document must fall within a statutory exemption. See Trans–Pacific Policing Agreement v. United States Customs Serv., 177 F.3d 1022, 1027 (D.C.Cir.1999) ("It has long been a rule in this Circuit that nonexempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."). If the parties do not address segregability, the district court must raise it sua sponte. See Trans–Pacific, 177 F.3d at 1028.

The Internal Revenue Service heavily redacted two documents. See Joint Appendix 117 and 128. The Service's declaration contains no segregability analysis, and the district court made no segregability finding. We therefore must remand for a finding in this regard. The court also received an in camera declaration, which Billington correctly notes is disfavored.

See Armstrong v. Executive Office of the President, 97 F.3d 575, 580–81 (D.C.Cir. 1996) ("Case law in this Circuit is clear that when a district court uses an in camera affidavit, it must both make its reasons for doing so clear and make as much as possible of the in camera submission available to the opposing party."). Because the Service's public declaration is sufficient in all respects except segregability, we need not decide the propriety of the in camera declaration.

The State Department withheld a 14–page document containing notes from an interview in its entirety and released a one-page document with a couple of lines redacted. The district court initially found the Department's declaration inadequate to support the Department's exemption 6 claim and ordered an in camera review of the documents. See Billington I, 11 F.Supp.2d at 71–72. In Billington II, the district court made no written findings regarding the in camera review. In addition, the Department's declaration appears inadequate to support withholding the entire 14–page document. It may turn out that no further meaningful segregation of information can be made, but we cannot tell from the record. We are also uncertain that personal identifying information so permeates the document that no part of it can be released. On remand, the district court should determine the applicability of exemption 6 to these documents and examine whether any non-exempt portions can be released.

Affirmed in part, vacated in part, and remanded.

---

6. A couple of documents in the exhibits to the FBI's March 11, 1998, declaration (under seal) elliptically suggest the NCLC continued to harass its opponents into the 1980s. One is a heavily redacted letter dated September 24, 1982, located in Exhibit II. The other is a memorandum dated February 1, 1983, located in Exhibit I, part 2.

7. We have doubts that NCLC members' participation in financial crimes in the 1980s, without more, would support an inference that sources received an implied assurance of confidentiality. Cf. Schrecker v. United States Dep't of Justice, 74 F.Supp.2d 26, 35 (D.D.C. 1999) (passport fraud and contempt of Congress found sufficiently serious to infer confidentiality).