James **CAMPBELL**, Plaintiff,

v.

**U.S. DEPARTMENT OF JUSTICE,** Defendant.

No. CIV. A. 89–3016(RMU).

United States District Court, District of Columbia.

Sept. 28, 2001.

James Hiram Lesar, Washington, DC, Mark Steven Zaid, Washington, DC, for plaintiff.

Marina Utgoff Braswell, Michael Thomas Ambrosino, Fred E. Haynes, U.S. Attorney's Office, Washington, DC, for federal defendant.

## *MEMORANDUM OPINION*

GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

URBINA, District Judge.

## I. INTRODUCTION

This 12–year–old Freedom of Information Act ("FOIA") case comes before the court on the parties' cross-motions for summary judgment. The U.S. Department of Justice ("the defendant"), representing the Federal Bureau of Investigation ("FBI"), moves for summary judgment asserting that it has fully complied with the decision of the U.S. Court of Appeals for the District of Columbia Circuit with respect to the original information requested by the plaintiff, James Campbell ("the plaintiff"), in May 1988. The plaintiff opposes the motion, arguing that he is still being deprived of information relating to his request and that this denial of information indicates that the FBI has not fully complied with the circuit court's opinion.

Upon consideration of the parties' submissions, the applicable law, and the substantial record herein, the court will grant the defendant's motion for summary judgment only with respect to exemptions 7, 7(C), and 7(D). Regarding the adequacy of the search and the exemption 1 withholding, this court is not persuaded by and therefore denies the defendant's motion for summary judgment on this count. Accordingly, the court grants the plaintiff's motion for summary judgment with respect to the adequacy of the search and the use of exemption 1, but denies the plaintiff's motion for summary judgment in all other respects.

## II. BACKGROUND

### A. Factual History

The facts giving rise to the plaintiff's claims are set out in the opinion of the U.S. Court of Appeals for this circuit which reversed this court's decisions as to the plaintiff's claims. *See Campbell v. United States Dep't of Justice,* 164 F.3d 20 (D.C.Cir.1998). By way of background, the plaintiff is a journalist and author commissioned by two London publishers to

write a biography about the 1960s writer and civil-rights activist James Baldwin. *See* Compl. ¶ 4. On May 10, 1988, in the course of conducting his research, the plaintiff filed a FOIA request with the FBI's New York office seeking to obtain the FBI's "file" pertaining to James Baldwin. *See id.* Shortly after his initial request, the FBI informed the plaintiff that his request was being forwarded to FBI headquarters for processing. *See id.* ¶ 5. Because of the sheer number of responsive documents combined with the overall number of FOIA requests, the FBI notified the plaintiff in September 1988 that his request would be dealt with in the order that it was received and that the FBI was denying the plaintiff's request for expedited treatment. *See id.* ¶¶ 9–11. Following a flurry of written correspondence and the release of relatively few documents, the plaintiff filed his initial complaint on November 2, 1989, seeking to compel the FBI to expedite his request for the documents. *See* Compl. ¶¶ 1, 3.

### B. Procedural History

### 1. The Initial Complaint

After Mr. Campbell's initial filing, U.S. District Judge Pratt for the District of Columbia denied the plaintiff's request for expedited review and required the FBI to file a status report updating their progress. *See* Order dated December 14, 1989 (Pratt, J.). That same day, the FBI released about 1,000 documents that were responsive to the plaintiff's request. *See Campbell v. United States Dep't of Justice*, 1996 WL 554511, *1 (1996). On March 13,

1990, both the FBI and the Central Intelligence Agency ("CIA") released more documents relevant to the plaintiff's request. *See id.* Over the course of the next several years, Judge Pratt issued multiple stays giving the government more time to conduct reviews of withheld documents in light of recent Supreme Court decisions and new Executive Agency Guidelines.[1] As a result of these reviews, more documents were declassified and released to the plaintiff. *See id.* The plaintiff filed his cross-motion for summary judgment in February 1995, and in October 1995, the case was transferred to this court. In June 1996, final briefings on the cross-motions for summary judgment were filed and the case became ripe for decision.

This court initially ruled that the defendant's motion for summary judgment be granted in part and denied in part without prejudice and that the plaintiff's motion for summary judgment be denied in part without prejudice. *See id.* The court also ordered an *in camera* review of certain documents to determine the applicability of FOIA exemption 7(E), which affords protection to information that "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . ." *See id.; see also* 5 U.S.C. § 552(b)(7)(E). Subsequently, the court granted in part the remainder of the defendant's summary judgment motion. *See* Order dated August 6, 1997.

### 2. The Appeal

As previously stated, the plaintiff appealed the court's ruling on the summary-

---

1. The district court granted stays to allow review of documents in light of the more stringent review standards regarding confidential sources contained in *United States Dep't of Justice v. Landano*, 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993) (holding that the government is not entitled to the presumption that all sources supplying information to FBI in course of criminal investiga-

tion are confidential sources within meaning of section of FOIA exempting agency records compiled for law enforcement purposes). In addition, that court also granted an extension so the government could apply the new guidelines issued by the United States Attorney General regarding FOIA requests. *See Campbell v. United States Dep't of Justice*, 1996 WL 554511, *2 (D.D.C.1996).

judgment motions to the United States Court of Appeals for the District of Columbia Circuit. The plaintiff argued that the FBI's search for documents responsive to his request was inadequate and that the documented support invoking the FOIA exemptions was "insufficiently detailed to establish the absence of a genuine dispute of material fact." *See Campbell v. United States Dep't of Justice,* 164 F.3d 20, 26 (D.C.Cir.1998). The circuit court agreed with the plaintiff and reversed and remanded the case back to this court with directions to the FBI to search the electronic surveillance index ("ELSUR")[2] and tickler files,[3] and to justify with sufficient detail its decisions to withhold information pursuant to FOIA exemptions 1, 7(C), and 7(D). *See id.* at 36. Cognizant of the mandate and standards established by the circuit court, the FBI reevaluated its documents, conducted new searches and subsequently filed a new motion for summary judgment. *See* Def.'s Mot. for Summ. J. at 1. The new motion asserts that the FBI has complied in full with the standards as directed by the circuit court. *See id.* The plaintiff has filed an opposition to this motion, claiming that the FBI has still failed to conduct an adequate search and disputing many of the exemptions claimed by the government. *See generally* Pl.'s Mot. for Summ. J. With cross-motions for summary judgment filed, a declaration provided by the FBI's FOIA officer, Scott Hodes ("Mr.Hodes"), and a Vaughn Index submitted, this court is in a position to oversee the remand ordered by the circuit court and determine whether compliance with that remand order has been achieved by the defendant.

**2.** The ELSUR is an electronic index utilized by the FBI to store and organize these documents. *See Campbell,* 164 F.3d at 27 n. 1.

**3.** Tickler is a term used by the FBI to indicate "a duplicate file containing copies of documents, usually kept by a supervisor. Such files can be of interest to a FOIA requester because they could contain certain documents that failed to survive in other filing systems or that include unique annotations." *See id.*

## III. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir. 1995). To determine what facts are "material," a court must look to the substantive law on which each claim rests. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one that, if resolved, could establish an element of a claim or defense and, therefore, affect the outcome of the action. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *see also Anderson* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving par-

ty, a moving party may succeed on summary judgment. *See id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *See Greene v. Dalton,* 164 F.3d 671, 674 (D.C.Cir.1999). Rather, the nonmoving party must come forward with specific facts "that would enable a reasonable jury to find in its favor." *See id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

### B. Adequacy of the Search

■ It is without controversy that the law of this circuit regarding the adequacy of FOIA searches clearly sets forth that the agency must "demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *See Valencia–Lucena v. United States Coast Guard,* 180 F.3d 321, 325 (D.C.Cir.1999) (citing *Truitt v. Dep't of State,* 897 F.2d 540, 542 (D.C.Cir.1990)) (quoting *Weisberg v. Dep't of Justice,* 705 F.2d 1344, 1351 (D.C.Cir.1983)). This standard is consistent with the long-established congressional purpose of open government. *See Campbell,* 164 F.3d at 27. To establish that the agency has fulfilled its FOIA obligations, "[t]he agency must show that it [has] made a good faith effort to conduct a search for the requested records, using methods which can reasonably be expected to produce the information requested." *See Valencia–Lucena,* 180 F.3d at 326 (quoting *Oglesby v. United States Dep't of the Army,* 920 F.2d 57, 68 (D.C.Cir.1990)). Given that the present case is in the summary-judgment stage, the agency has the burden to show not only that it acted in compliance with FOIA, but also that it searched all locations likely to contain responsive materials.

*See Oglesby,* 920 F.2d at 68. If the court determines that there is substantial doubt as to these facts "'particularly in view of well-defined requests and positive identification of overlooked materials,' summary judgment is inappropriate." *See Valencia–Lucena,* 180 F.3d at 326 (quoting *Founding Church of Scientology v. Nat'l Sec. Agency,* 610 F.2d 824, 837 (D.C.Cir. 1979)).

■ In determining the adequacy of the FBI's search in the present case, the court is guided not only by the standards as articulated in the circuit court's opinion in *Campbell,* but also by the recent decisions of this circuit. Finding that the FBI's initial search was inadequate, the circuit court held that "an agency can not limit its search to only one record system if there are others that are likely to turn up the information requested." *See Campbell,* 164 F.3d at 28 (quoting *Oglesby,* 920 F.2d at 68). The circuit court remanded the case to allow the FBI time to search the ELSUR for the aforementioned tickler files. *See id.* at 29.

In his motion opposing summary judgment, the plaintiff asserts that the FBI has again failed in its duty under FOIA to "conduct an adequate search" for the requested records. *See* Pl.'s Cross–Mot. for Summ. J. at 3. The plaintiff argues that "the FBI has not demonstrated 'beyond a material doubt' that the search it conducted was reasonable." *See id.* at 4. Specifically, the plaintiff disputes the defendant's claims that a good faith effort was made to locate the "tickler" files referenced in many of the documents disclosed by the FBI. *See id.* at 5. The plaintiff contends that the FBI "has not conducted any search for ticklers at all." *See id.* at 6. The defendant responds by claiming that a search for the referenced ticklers is not possible for several reasons, including the FBI's internal policy regarding the retention of ticker documents.[4] *See* Def.'s Re-

---

4. To further justify its position that a search

for the referenced ticklers is not possible, the

ply in Support of its Mot. for Summ. J. and in Opp'n to Pl.'s Cross–Mot. for Summ. J. at 5; *see also* Hodes Decl. ¶ 8. The plaintiff requested documents between 1952 and 1977. *See id.* According to the declaration of Mr. Hodes, "ticklers were not to be retained for more than 60 days" during this period. *See id.* Casting doubt on the validity of this internal policy, the plaintiff points to tickler documents that were recovered by the FBI during the referenced time period pertaining to the assassination of President John F. Kennedy as well as "former high FBI officials such as Clyde Tolson and Louis Nichols that have been processed for public release." *See* Pl.'s Cross–Mot. for Summ. J. at 6; *see also* Pl.'s Reply at 3.

██ The facts and arguments advanced by both parties are responsive to the circuit court's 1998 opinion. The court, however, is guided by this circuit's more recent decision in *Schrecker v. United States Dep't of Justice*, 254 F.3d 162 (D.C.Cir. 2001). Indeed, in *Schrecker*, the FBI, relying on the same internal policy memorandum, argued that it did not need to search the tickler files because they were to be destroyed after 60 days. *See id.* at 165. In addition, similar to the plaintiff herein, the plaintiff in *Schrecker* argued that there was no evidence that the requested documents were destroyed—a curious omission considering that the FBI had a practice of recording the destruction of such records. *See id.* In light of these arguments, the court held that, absent evidence to rebut the plaintiff's assertions, "the standard[,] 'no longer serv[ing] a useful purpose[,]' is simply too vague to obviate the need for a search." *See id.* As

stated before, this court is bound by *Schrecker* and therefore holds that the FBI's failure to adequately search for the ticklers concerning James Baldwin constitutes grounds to declare the search inadequate. *See id.* Thus, the court denies the defendant's motion for summary judgment with respect to the adequacy of the search. The court further grants the plaintiff's motion for limited discovery as to the location and contents of the disputed tickler files.

## C. FOIA Exemption 1 (National Security)

██ Even with its overwhelming posture towards "open government," FOIA does afford multiple exemptions under which agencies are permitted to withhold information. *See Campbell*, 164 F.3d at 27. One such exemption is the "national security exemption" that allows the withholding of information "specifically, authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy." *See* 5 U.S.C. § 552(b)(1)(A). Under this exemption, it is well-settled law that "[a]n agency bears the burden to justify exemptions under FOIA." *See Campbell*, 164 F.3d at 30 (quoting *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250 (D.C.Cir. 1993)). To satisfy its burden, the subject agency may submit a declaration from a qualified individual attesting to the basis for the agency's withholding of information under the exemptions. *See id.* In cases where a proper declaration is submitted by the agency, "substantial weight" is merited to the agency's national security determinations. *See id.* (citing *King v. Dep't of Justice*, 830 F.2d 210, 218 (D.C.Cir.1987)).

---

defendant cites the fact that even if more time was allotted beyond the 60 day period during which ticklers were retained, copies of the records would have been destroyed once they lost their usefulness to the supervisor. *See* Hodes Decl. ¶ 9. In addition, the defendant

asserts that, since the ticklers are not indexed in the FBI's Central Record System ("CRS") or any other index, the documents are not retrievable, even if they did exist at one time. *See id.* ¶ 10.

Despite such deference attributed by the courts, there are still standards that the declaration must meet to justify a grant of summary judgment. Specifically, the declaration must "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *See King*, 830 F.2d at 218. Recent decisions by this circuit have established the standard for review by holding that affidavits justify summary judgment when they "are reasonably detailed and submitted in good faith." *See Schrecker v. United States Dep't of Justice*, 74 F.Supp.2d 26, 30 (D.D.C.1999) *aff'd*, 254 F.3d 162 (D.C.Cir.2001).

In the instant case, the circuit court held that the affidavits submitted by the FBI were insufficiently detailed to warrant a finding of summary judgment. *See Campbell*, 164 F.3d at 29. The court went on to affirm the decision in *King*, thereby requiring the FBI to provide details "permit[ing] Campbell and the district court to understand the foundation for and necessity of the FBI's classification decisions." *See id.* at 32 (citing *King*, 830 F.2d at 218). In moving for summary judgment, the FBI asserts that it has complied with the circuit court's standards for withholding information under Section 552(b)(1)(A). *See* Def.'s Mot. Summ. J. at 18. The defendant also points out that, despite the holding of the circuit court, the FBI re-reviewed all documents according to the provisions of Executive Order No. 12,958, 60 Fed.Reg. 19825 (April 17, 1995). This review resulted in the release of previously withheld documents and limited the classified material to 72 out of approximately 1,390 pages. *See* Hodes Decl. ¶ 18. The plaintiff responds by stating that "[m]ost of the documents at issue date to the 1960s ... [and][t]he FBI has not explained why these factors do not lessen national security concerns." *See* Pl.'s Mot. for Summ. J. at 15. In addition, the plaintiff complains

that, according to *Wiener v. FBI*, 943 F.2d 972 (D.C.Cir.1991), the general assertions made by the FBI are inadequate to support summary judgment. *See* Pl.'s Mot. for Summ. J. at 16 (citing *Wiener*, 943 F.2d 972, 981 (D.C.Cir.1991)).

Having thoroughly reviewed the Executive Order, affidavits, and indices submitted by the FBI, the court deems them to be in some respects consistent with the precedent of this circuit, while in other respects still lacking the detail and specificity required. The mandate from the circuit court required the FBI to draw connections between the documents and the standards for the national security exemption. *See Campbell*, 164 F.3d at 31. At first glance it seems that the FBI complied with the mandate issued by the circuit court. Upon further examination, however, this court finds the documentation and reasoning supplied by the FBI is insufficient for a grant of summary judgment. The FBI clearly defines the general standards that govern the exemption when it states "[t]he release of this information would reveal the application of a method to develop and acquire foreign intelligence or counterintelligence information and the specific target of the application." *See* Hodes Decl. Ex. F, Doc. No. 236. But in the very next sentence, the FBI's declaration becomes conclusory, stating "the disclosure of this information could reasonably be expected to cause serious damage to the national security." *See id.* Absent any further justification or explanation as to why this conclusion must follow from the information's disclosure, the FBI fails to "adequately explain a nexus with national security concerns [as] required under Exemption 1." *See Schrecker*, 74 F.Supp.2d at 30.

The documents further reveal that the FBI again falls short of the requirements established by the circuit court. When

addressing documents containing "a singular identifier for an intelligence method ...", the FBI seems to comply with the direction of the court by asserting that "correlating the documents [and] matching source identifiers ... a hostile analyst using deductive reasoning and inside knowledge, can discern the true identity of the method and thereby neutralize the method and compromise information previously provided by the source or method." *See id.* Nevertheless, the same conclusory statement as previously quoted follows this reasoning, leaving the court and the plaintiff with no other recourse but to speculate as to the reasons why disclosure would damage national security. Time and again, the phrase "the disclosure of this information could reasonably be expected to cause serious damage to the national security" appears as a justification for withholding information under exemption 1. *See generally* Hodes Decl., Exhibits. Reliance on this vague and, at best, ambiguous standard is not sufficient under the precedent of this circuit. *See generally Campbell,* 164 F.3d 20. Indeed, more information as to precisely how national security is threatened is required of the government before the court can grant a motion for summary judgment.

▉ Simply put, the FBI's failure to provide concrete reasoning for these conclusions flies in the face of the circuit court's opinion and does not justify granting its motion for summary judgment. Therefore, with respect to the exemptions claimed by the FBI under FOIA exemption 1, the court denies the defendant's motion for summary judgment and hereby grants the plaintiff's motion on this point. In addition, an order to show cause will shortly follow this Memorandum Opinion directing the defendant to submit new justifications consistent with both, the court's reasoning contained herein as well as the mandate established by the circuit court's opinion.

## D. FOIA Exemption 7 (Law Enforcement Purpose)

▉ In addition to national security, FOIA also exempts from disclosure "records or information compiled for law enforcement purposes ..." *See* 5 U.S.C. § 552(b)(7). While the standard for review of an agency like the FBI, which specializes in law enforcement, is "deferential," it is not "vacuous." *See Campbell,* 164 F.3d at 32 (citing *Pratt v. Webster,* 673 F.2d 408, 419 (D.C.Cir.1982)). Specifically, the standard requires the agency to establish "a rational 'nexus between the investigation and one of the agency's law enforcement duties,' and a connection between an 'individual or incident and a possible security risk and/or violations of federal law.' " *See id.* (quoting *Pratt,* 673 F.2d at 420–421). The agency must also show that their law enforcement duties are "based on information sufficient to support at least a 'colorable claim' of its rationality." *See Pratt,* 673 F.2d at 421. The court in *Pratt* also recognized that "a court should be hesitant to second-guess a law enforcement agency's decision to investigate if there is a plausible basis for its decision." *See id.* It is with this deferential standard in mind that the court views the documents in this case and their relation to a law enforcement purpose.

With the case at bar, the circuit court held that the FBI relied on an untenable position that once an investigation is justified, all documents related to that investigation are eligible for exemption from FOIA. *See id.* at 33. Regarding the threshold requirement of exemption 7, the court mandated that the FBI account, through sufficiently detailed explanations, why each document is related to a specific law enforcement purpose. *See id.* It is therefore incumbent upon the court to determine whether the FBI has met the

threshold requirement that allows for the use of exemption 7.

This circuit has previously held that "[a]n objective finding of such a nexus is refutable only by 'persuasive evidence that in fact another, non-qualifying reason prompted the investigation.'" *See Keys v. United States Dep't of Justice,* 830 F.2d 337, 340 (D.C.Cir.1987) (quoting *Shaw v. FBI,* 749 F.2d 58, 63 (D.C.Cir.1984)). In reviewing the plaintiff's motion, the court finds no "persuasive" evidence to justify a finding that the FBI's investigation of James Baldwin is anything other than what it has been purported to be. That is, the investigation was not an unjustified invasion of personal privacy, rather it was the outgrowth of the political climate of that era and justified by the existing statutes relied upon in Mr. Hodes's declaration. *See* Hodes Decl. ¶¶ 49–54. Additionally, the claims that James Baldwin was never found in violation of any law and that the associations for which he was investigated "never go beyond the innocuous" are the personal views of the plaintiff and cannot be utilized as persuasive evidence. *See* Pl's Mot. for Summ. J. at 30; *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505; *Greene,* 164 F.3d at 674. Further, the argument referencing the duration of time during which the investigation remained open is not relevant to a determination of an investigation's lawful purpose and, therefore, should not be grounds to deny exemption 7 claims. *See id.* To be sure, this circuit has recognized that there is "... no requirement under exemption 7 that any violation of federal law be impli-

cated, so long as the information is compiled for a 'federally *authorized* [law enforcement] purpose.'" *See Keys,* 830 F.2d at 342 (quoting *Bevis v. Department of State,* 801 F.2d 1386, 1388 (D.C.Cir.1986)). Mr. Hodes's declaration identifies multiple federally authorized law enforcement purposes that justify each file on James Baldwin. *See* Hodes Decl. ¶¶ 48–54. This document also points to specific actions and associations that spawned the FBI's investigations, including, but not limited to, associations with various individuals such as Betty Shabazz, Bobby Hutton, and "various Communist front groups." *See id.* ¶¶ 52–54.[5]

 Given the number of documents, their location in various offices around the country, and the system that the FBI utilizes to maintain records, this court finds the documentation sufficient to meet the circuit court's mandate. *See Campbell,* 164 F.3d at 33–34. Finally, this court defers to the declaration of Mr. Hodes for the proposition that "the FBI looks at the file at the time it was created, not at how history has judged the Legislative and Executive actions that ... gave the FBI the authority to conduct these investigations." *See id.* ¶ 48. The fact that in hindsight these reasons may have been insufficient to justify the scrutiny that James Baldwin received is not "persuasive evidence" for this court to second-guess a decision of a law enforcement agency to perform an investigation. Thus, this court determines that the specific evidence and statutory authority cited by the FBI is sufficient to

---

5. Mr. Hodes's declaration cites numerous specific examples to justify FBI investigations. For example, it states that the information from the New York file was "based on information received from a tap on the telephone of Elijah Muhammad." *See* Hodes Decl. ¶ 49. The information in the "Headquarters Files" was derived from "information which indicated that he [James Baldwin] was threatening

to make false charges against the FBI in an interview scheduled to air on a local TV station," and, with respect to a book published by James Baldwin, "pursuant to 18 U.S.C. § 1466–Engaging in the Business of Selling or Transferring of Obscene Material." *See id.* ¶¶ 50–51. Each subsequent file recites various justifications for the investigations pursuant to laws and policies in effect at the time.

meet both the threshold requirements of exemption 7 and the requirements of the circuit court's opinion.

### E. Exemption 7(C) (Invasion of Personal Privacy)

■ Once the threshold requirement of exemption 7 is satisfied, the agency can then apply one of that section's five subdivisions. In this case, the FBI relies heavily on subsection C, which states that information may be withheld if it "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *See* 5 U.S.C. § 552(b)(7)(C). On this point, the Supreme Court has held that "[a]n agency may not withhold records under exemption 7(C) solely because disclosure would infringe legitimate privacy interests, but must balance privacy interests against the public's interest in learning about the operations of its government." *See United States Dep't of Defense v. Federal Labor Relations· Auth.,* 510 U.S. 487, 495, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994); *see also United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 762, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989); *Campbell,* 164 F.3d at 33.

In remanding the present case, the circuit court instructed this court to "provide an analysis that 'fully articulate[s] the balance it reaches' and resolve 'fact intensive' issues to permit 'efficient and meaningful'

appellate review." *See id.* (citing *Summers v. Dep't of Justice,* 140 F.3d 1077, 1083 (D.C.Cir.1998)). Both the circuit court and the plaintiff have articulated concern about the issue of invoking exemption 7(C) as to persons who are deceased. *See Campbell,* 164 F.3d at 33; Pl's Cross-Mot. for Summ. J. at 41. Given the amount of time that has passed since the records were acquired, the court must, under the circuit court's mandate and as argued by the parties, assess the effect that death has on the balancing test and ensure that the FBI has made a "reasonable effort to account for the death of a person on whose behalf the FBI invokes exemption 7(C)." *See id.* (citing *Summers,* 140 F.3d at 1084–85; *Kiraly v. FBI,* 728 F.2d 273, 277–78 (6th Cir.1984)).

The FBI asserts that for every exemption claimed it has identified the privacy interest at stake and balanced that with the public's interest in obtaining the information. The test applied by the FBI was "whether the information in question would inform [the] plaintiff or the general public about the FBI's performance of its mission ... and/or how the FBI actually conducts its internal operations and investigations." [6] *See* Hodes Decl. ¶ 56. Further, in every instance the FBI also sought to determine if the exempted person was still alive. *See id.* ¶ 57. To accomplish this, the FBI consulted the "Who was Who" [7] publication as well as other internal

---

**6.** The FBI has devised 10 categories of information that it claims should be withheld under exemption 7(C). These categories include: (1) FBI personnel names and identifying data; (2) names of third parties overheard on surveillance along with identifying information; (3) names and identifying data of third parties who were of investigative interest to the FBI; (4) names and identifying information of third parties mentioned; (5) names and identifying information of third parties who provided information to the FBI; (6) financial and commercial sources; (7) names of state or local law enforcement

officers; (8) non-FBI federal employees; (9) names of state employees, and; (10) names of foreign police or officials. *See* Hodes Decl. ¶¶ 58–74.

**7.** No description of this subject source (i.e. "Who was Who") has been provided to the court in order for the court to determine its credibility. *See* Hodes Decl. at ¶ 57. The question, however, need not be reached since the plaintiff does not dispute the document's credibility. The court simply notes this for the record.

sources. *See id.* The information was released in cases where it was determined that the exempted person's age had exceeded 100 years. *See id.* The plaintiff believes that the FBI has not properly applied the circuit court's mandate and asserts that the FBI's definition of public interest is too "truncated" by attempting to create an "artificial separation" between "what it has witnessed and learned ... from the public interest in the FBI's performance." *See* Pl.'s Cross–Mot. for Summ. J. at 38. Addressing the privacy interest of deceased individuals, the plaintiff counters that the 100–year rule imposed by the FBI is calculated to exclude very few people and accuses the FBI of not having used the best indices at its disposal to determine whether individuals are dead or alive.[8] *See id.* at 40–41.

It is evident to the court that the delicate task of balancing the respective private and public interests with respect to information uncovered as a result of law enforcement investigations has not been taken lightly by either party. The court recognizes the inherent interest of the FBI in maintaining a level of security and privacy such that it is not impaired in carrying out its important duties. But the history and public policy of FOIA dictate that the public's interest in knowing how their government functions is substantial. *See generally* 5 U.S.C. § 552. These competing interests are complicated in the present case by the extremely sensitive nature of the material to a wide variety of people. Needless to say that hindsight and history instruct this court that much of the FBI's business during the time period in question was at best precarious in nature, thus heightening the public's interest in know-

ing why and against whom the FBI undertook the investigations and tactics that it did. This increase in the public interest, however, is not without a flip side. Namely, the people who were involved in these investigations deserve protection of their reputations as well as recognition that they were simply doing a job that the cultural and political climate at the time dictated.

■ This court rules that Mr. Hodes's Declaration, as submitted by the FBI herein, adequately balances these interests and indicates a good faith attempt to withhold as little information as possible, while at the same time shielding individuals who warrant protection from the heightened scrutiny to which they did not consent. Accordingly, the court finds the FBI's definition of the public's interest and the various categories created by the FBI to withhold information adequate under the circuit court's mandate. *See Campbell,* 164 F.3d at 34.

Specifically, with respect to the issue of the effect that death has on this balancing test, the court concludes that the implementation of the 100–year test does not violate the principles of FOIA. The 100–year test, as utilized by the FBI herein, reasonably considers not only factors such as the life expectancy of the individual involved, but also takes into sufficient account the "reputational and family related privacy expectations [that] survive death." *See Campbell,* 164 F.3d at 33.

It is for these reasons that the court concludes that the information contained in the record before the court adequately balances the competing public and private interests and pays proper respect to the issue of the death of the individuals involved. The court, therefore, grants the

---

8. The plaintiff argues that the FBI did not use all materials at its disposal. *See* Pl.'s Cross–Mot for Summ. J. at 41. Specifically, the plaintiff argues that the Social Security Death Benefits Index could have been used, via the Internet, to determine the status of many of the people involved. *See id.* The plaintiff, however, points to no authority or evidence that this assertion is true or even practicable as far as the FBI is concerned.

defendant's motion for summary judgment as to exemption 7(C) and, in doing so, denies the plaintiff's motion on this point.

### F. FOIA Exemption 7(D) (Expectation of Confidentiality)

■ Exemption 7(D) provides that documents compiled for law enforcement purposes can be withheld if they "could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority, or any private institution that furnished information on a confidential basis .... " *See* 5 U.S.C. § 552(b)(7)(D). The Supreme Court has ruled that simply because an individual provides information to a law enforcement agency does not render them a " 'confidential source' within the meaning of the exemption." *See United States Dep't of Justice v. Landano,* 508 U.S. 165, 178, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993); *see also Campbell,* 164 F.3d at 34. Rather, the standard for determining if a source is "confidential" is if "the particular source spoke with an understanding that the communication would remain confidential." *See Landano,* 508 U.S. at 178, 113 S.Ct. 2014.

In this case, the FBI has claimed 7(D) exemptions for both implied and express understandings of confidentiality. The circuit court has expressly ruled on this distinction, holding that "[t]he district court's reasoning with respect to the implied assurances is correct, but the FBI's declarations with respect to express assurances are insufficient to warrant summary judgment." *See Campbell,* 164 F.3d at 34. Thus, in accordance with the circuit court's decision, this court will only address the

·issue of express assurances of confidentiality.

In order to meet its burden, the FBI must show "probative evidence that the source did in fact receive an express grant of confidentiality." *See id.* (quoting *Davin v. United States Dep't of Justice,* 60 F.3d 1043, 1056 (3d Cir.1995)). The evidence allowable can take multiple forms, including the type that the FBI seeks to introduce here, namely, "contemporaneous documents discussing practices or policies for dealing with the source or similarly situated documents." *See Computer Prof'ls for Social Responsibility v. United States Secret Serv.,* 72 F.3d 897, 906 (D.C.Cir.1996).

■ In the present case, in addition to Mr. Hodes's declaration, the FBI has provided Manuals of Rules and Regulations that deal with confidential sources that were in effect at the time the information on James Baldwin was gathered, as well as Bureau Bulletins issued by the FBI headquarters also in effect at the relevant time. *See* Hodes Decl., Ex. G. Despite the plaintiff's arguments to the contrary, the court deems these documents, in addition to Mr. Hodes's declaration itself, to be sufficient to warrant summary judgment with respect to the exemption 7(D) claims. The plaintiff cites to several passages contained in the 1952 Rules and Regulations that he claims indicate no express grant of confidentiality from the agent to the informant but rather establishes one flowing from the informant to the agent. *See* Pl.'s Cross–Mot. for Summ. J. at 44–45. This evidence however, is not persuasive due in part to the plaintiff's misinterpretation of those passages.[9] Therefore, presented

---

9. The plaintiff cites the following passage: "In contacting an informant, the agent to whom the informant is assigned should become so well acquainted with the informant that *he* will not breach the confidential relationship and if there is the slightest indication the informant may do so, the agent should be able to anticipate this action and forestall."

*See* Pl.'s Cross–Mot. for Summ. J. at 44 (emphasis in original). The plaintiff reads the underlined "he" as referring only to the informant. However, although the phrasing may not be as clear as possible, this pronoun refers not to the informant, but rather to the agent himself. In addition, the term "confi-

with "probative evidence" that the FBI did make extensive use of express agreements of confidentiality, this court grants the defendant's motion for summary judgment with respect to exemption 7(D) claims and denies the plaintiff's motion on this point. *See Davin,* 60 F.3d at 1056.

### G. Miscellaneous Claims

 In both the plaintiff's cross-motion for summary judgment and reply, he raises the issue that the FBI never previously withheld documents pursuant to exemption 6. *See* Pl.'s Cross–Mot. for Summ. J. at 23–24; *see also* Pl.'s Reply at 13–14. Having conducted a review of both the initial record as well as the one compiled on appeal, the court agrees with the plaintiff's contention. In doing so, the court notes that this circuit has previously held that the failure of an agency to assert an exemption before the district court will constitute a waiver of that exemption before the appellate court. *See Jordan v. Department of Justice,* 591 F.2d 753, 779–80 (D.C.Cir.1978) (en banc). Because this is not a new proceeding, the parties are limited to the exemptions previously litigated before this court and reviewed by the circuit court. *See id.* In light of this rule, the court denies the defendant's motion for summary judgment with respect to exemption 6 and instructs the FBI to release the relevant information to the plaintiff.

### IV. CONCLUSION

For the foregoing reasons, the court denies the defendant's motion for summary judgment with respect to the adequacy of the search and exemption 1. The court also grants the defendant's motion for summary judgment with respect to exemptions 7, 7(C), and 7(D). In so doing, the court denies the plaintiff's motion for summary

judgment with respect to exemptions 7, 7(C), and 7(D), and grants the plaintiff's motion for summary judgment for limited discovery as to the location and contents of the tickler files referenced in Part B of the court's Analysis segment contained herein, and as to exemptions 1 and 6. An Order directing the parties in a manner consistent with this memorandum is separately and contemporaneously executed and issued on this 28th day of September 2001.

---

dential relationship" implies a reciprocal agreement that is not to be breached by either party. Thus, the plaintiff's reading of the

cited passage is incorrect and not persuasive. *See id.*