**Ellen W. SCHRECKER, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

**No. Civ.A. 95–0026(RCL).**

United States District Court, District of Columbia.

Aug. 7, 2002.

James H. Lesar, Washington, DC, for plaintiff.

Michael J. Ryan, Assistant U.S. Attorney, Washington, DC, for defendant.

### *MEMORANDUM OPINION*

LAMBERTH, District Judge.

This matter returns to the Court on the parties' fourth set of cross-motions for summary judgment. Defendant moves for summary judgment on the adequacy of its search for ticklers and the adequacy of its attempts to determine whether individuals are alive or dead for the purpose of balancing privacy interests versus public interests pursuant to exemption 7(C). Plaintiff, on the other hand, requests discovery and a deposition of Scott Hodes to determine whether the FBI engaged in an adequate search for ticklers. Specifically, plaintiff seeks to depose Scott Hodes[1] and plaintiff also seeks an order instructing the FBI to engage in a more extensive search for ticklers. Based upon the parties' memoranda in support of and in opposition to these motions, the entire record herein, and the applicable law, plaintiff's motion will be denied and defendant's motions will be granted.

### I. BACKGROUND

#### A. Factual and Procedural History

Ellen Schreker, a history professor, initiates this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking information from the FBI regarding Gerhardt Eisler and Clinton Jencks. Both Jencks and Eisler were investigated by the Justice Department during the McCarthy era. Jencks was indicted for violating the Taft–Hartley act. He was an official within the Mine, Mill and Smelter Workers International Union in New Mexico. Eisler was a German communist who

resided in the U.S. from the late 1930's to 1949. Ms. Schrecker initiated her request for information in 1988. In 1995 she filed the instant FOIA claim with this Court.

A comprehensive history of the litigation is recorded in this Court's and the Court of Appeals for the District of Columbia Circuit's ("D.C.Circuit") prior opinions. *See Schrecker v. U.S. Dep't of Justice*, 14 F.Supp.2d 111, 113 (D.D.C.1998) (partially granting and partially denying plaintiff's motion for summary judgment, and denying defendant's motion for summary judgment); *Schrecker v. U.S. Dep't of Justice*, 74 F.Supp.2d 26, 28 (D.D.C.1999) (granting defendant's motion for summary judgment); *Schrecker v. U.S. Dep't of Justice*, 254 F.3d 162, 164 (D.C.Cir.2001) (partially reversing this Court's Nov. 29, 1999 opinion, remanding on the two issues addressed in the present opinion).

This Court granted summary judgment for the FBI in 1999. *See Schrecker*, 74 F.Supp.2d 26. In particular, the Court granted summary judgment on the following claims for the FBI: that the EOUSA did not need to reprocess any documents, that the FBI adequately searched for ticklers, and that the FBI had properly invoked the following FOIA exemptions: 1, 2, 3, 6, 7(C) 7(D). *Id.* Professor Schrecker appealed this Court's previous decision. *See Schrecker*, 74 F.Supp.2d at 28. On Appeal, the D.C. Circuit found that the FBI did not adequately search for ticklers and did not adequately balance the public interest versus privacy interests under exemption 7(C). *See Schrecker*, 254 F.3d at 164. The D.C. Circuit held that the FBI must search for ticklers once their existence was established. *Id.* at 164–5. The FBI admitted that ticklers were created

---

**1.** Scott Hodes is the Acting Chief of the Litigation Unit, Freedom of Information–Privacy Acts (FOIPA) Section, Records Management Division at FBI Headquarters (FBIHQ) in Washington, D.C. Mr. Hodes has provided affidavits discussing the FBI's activities.

but had refused to search for them because ticklers are not indexed to the Central Records System. *Id.* The D.C. Circuit also instructed the FBI to confirm that it had taken or would undertake certain basic steps to demonstrate that it had adequately balanced the public interest and privacy interests implicated under 7(C). *Id.* at 167. The D.C. Circuit could not confirm that the FBI consulted the Social Security Death Index or any other readily available sources to determine whether individuals whose third-party information was being kept confidential under exemption 7(C) were alive or dead. *Id.* at 167. Thus the remaining issues in this case are the FBI's search for ticklers and exemption 7(C).

## II. ARGUMENT

### A. Summary Judgment and The Freedom of Information Act

The Federal Bureau of Investigation moves for summary judgment, stating that it has completely abided by the June 26, 2001 decision of the D.C. Circuit with regards to searching adequately for ticklers and adequately assessing the relevant privacy interests of individuals under exemption 7(C). *See Schrecker v. United States Dep't of Justice,* 254 F.3d 162, 164 (D.C.Cir.2001). Professor Schrecker, in contrast, contends that the FBI has not adequately searched for ticklers and that the FBI has not acceptably sought to determine the relevant privacy interests under exemption 7(C) and therefore she seeks discovery and to depose Mr. Hodes with regards to the remaining two issues.

 Courts have long recognized that summary judgment is appropriate when the declarations together with the pleadings substantiate that there is no genuine issue of material fact and that the moving party as a matter of law is entitled to summary judgment. *See* Fed.R.Civ.P. 56(C); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is equally clear that, summary judgment under FOIA is only appropriate, however, when the agency seeking summary judgment engages in an adequate search for all relevant documents. *See Weisberg v. Dep't of Justice,* 745 F.2d 1476, 1485 (D.C.Cir.1984). The adequacy of an agency's search may be determined by relying upon non-conclusory, detailed agency affidavits that have been given in good faith. *See Steinberg v. U.S. Dep't of Justice,* 23 F.3d 548, 551 (D.C.Cir.1994). The Court may award summary judgment relying only upon an agency's affidavits or declarations. *See Blanton v. United States Dep't of Justice,* 182 F.Supp 2d. 81, 84 (D.D.C.2002). The declarations and affidavits must contain sufficient detail, not be controverted by contrary evidence, and be given in good faith. *Id.* (citing *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981)).

### B. Adequacy of Search for Ticklers

 The D.C. Circuit ordered the FBI to perform an adequate search for ticklers. *See Schrecker v. U.S. Dep't of Justice,* 254 F.3d at 164–65. Ticklers are duplicate copies of FBI documents that may be of value to requesters because they have survived the original or they may contain unique annotations that provide information not present on the original. This Court must judge the adequacy of an agency's search on the basis of what is reasonable under the circumstances. *See Steinberg,* 23 F.3d at 551. An agency may use affidavits to demonstrate the adequacy of its search. *Id.* An agency's affidavits need not be precise but they must provide basic information on what records were searched, by whom, and in what manner. *Id.* at 552. A search need not be unreasonably burdensome to be considered ade-

quate. *See Nation Magazine v. U.S. Customs Service,* 71 F.3d 885, 892 (D.C.Cir. 1995). "The agency must show that it made a good-faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *See Campbell v. U.S. Dep't of Justice,* 164 F.3d 20, 27 (D.C.Cir.1998) (citing *Oglesby v. U.S. Dep't of the Army,* 920 F.2d 57 (D.C.Cir.1990)). An agency can not avoid searching a records system if it believes it contains responsive documents. *See Campbell,* 164 F.3d at 28. Reasonableness should guide the Court's determination of whether a search was adequate under FOIA. *Oglesby v. United States Dep't of the Army,* 920 F.2d 57, 68 (D.C.Cir.1990); *Weisberg* 745 F.2d at 1485.

DOJ and Ms. Schrecker disagree over the adequacy of the FBI's search for ticklers pertaining to Jencks and Eisler. *Compare Plaintiff's Memo. in support of Cross-motion,* March 27, 2002, at 1–2; *With Def. Renewed Motion.* Feb 2, 2002, at 8.

Ms. Schrecker provides several reasons for her assertion that the FBI's search for ticklers was inadequate: first the FBI failed to search for ticklers in the files of Assistant Directors D.M. Ladd and Gordon Nease, second that it has only searched for ticklers that were mentioned in *Vaughn* documents, and finally the FBI refuses to investigate and use the methods that discovered ticklers associated with the King and Kennedy assassinations. *See Plaintiff's Reply,* June 6, 2002, at 11–12. Ms. Schrecker also argues that the FBI's affidavits regarding ticklers are conclusory and are also inadmissible as hearsay because Mr. Hodes did not conduct the searches himself. *Id.* at 8.

DOJ argues that the FBI has adequately searched for ticklers as demonstrated by its physical search of the National Security Division, which houses the former Domestic Intelligence Division, and the field offices of: Albuquerque, New York, and El Paso field offices. *See 5th Hodes Dec'l,* at 4; *6th Hodes Dec'l,* at 6. The Domestic Intelligence Division is the part of the FBI that conducted investigations on Eisler and Jencks. *Id. See Defendant's Renewed Motion for Summary Judgment, Fifth Dec'l of Scott Hodes* at 4, Feb. 1, 2002; *Def.Opp.,* May 8, 2002, at 3. The FBI chose offices where the investigation originated or where it was probable that ticklers might be found. *Id.* The FBI argues that it has fully complied with the D.C. Circuit's instructions regarding the search for ticklers. *See Fifth Hodes Dec'l* at 8. The FBI asserts that a search of its Central Records Facility is unreasonable as there are 576,726 linear feet of FBI file records located at the Central Records Facility. *Id.* at 3. Moreover, since ticklers are not indexed a search of the Central Records Facility would require the FBI to hand-search through millions of documents. *Id.* Mr. Hodes in his declaration states that ticklers for all responsive documents were searched rather than only ticklers for *Vaughn* documents. *See 6th Dec'l of Scott Hodes* at 8.

 This Court finds that the FBI searched for ticklers in places that the FBI believed were most likely to contain responsive ticklers. The FBI's search for ticklers in locations most likely to lead to discovery of ticklers is reasonable and therefore adequate. *See Weisberg,* 745 F.2d at 1485. The FBI's affidavit stating that it tasked its National Security Division to physically search its offices evinces no evidence of bad-faith nor does the FBI's reasoning for not searching its off-site Central Records storage facility. *See 5th Hodes Decl.* at 3. The Court does not find sufficient merit in Ms. Schrecker's argument regarding the adequacy of Mr.

Hodes affidavit relating to the search for ticklers. *See Plaintiff's Reply,* June 6, 2002 at 8–9. Mr. Hodes described where the searches had occurred, how, and who conducted the searches. *6th Hodes Dec'l.* at 2. Ticklers are not indexed and therefore a search of the FBI's off-site facility would require a hand-search through 574,-726 linear feet of FBI file records. *Id.* This Court finds that to require an agency to .hand search through millions of documents is not reasonable and therefore not necessary; here the agency reasonably chose to search the most likely place responsive documents would be located. *See Oglesby* 920 F.2d at 68. In *Oglesby* the court held that an agency must explain why it chose to search certain record system's and not others. *Id.* Here the FBI has explained why it chose to search the offices it searched: National Security Division (NSD), Albuquerque, New York, and El Paso and not the Central Records System or other facilities. *See Opposition to Plaintiff's Cross–Motion,* at 3. The FBI found the NSD, Albuquerque, New York and El Paso locations to have the greatest possibility of containing responsive documents because the investigations began there or individuals who worked on the investigations had worked in these offices. *Id.* at 5–7.

■ The Court also finds Ms. Schrecker's argument that Mr. Hodes's affidavit is inadmissible as hearsay to be without merit. Mr. Hodes in his present capacity is a representative of the FBI and is able to relay information regarding the activities of the FBI. *See SafeCard v. Securities and Exchange Com'n,* 926 F.2d 1197, 1201 (D.C.Cir.1991). In *SafeCard* the court determined that an affidavit of an SEC employee could be relied upon as evidence of what happened to missing documents. *Id.* The court held that the employee, who provided the affidavit, was responsible for

the recovery of the boxes and was therefore an appropriate individual to provide a statement about the missing documents, even though she had not physically touched the boxes. *Id.* In this case Mr. Hodes is responsible for the FBI's compliance with FOIA litigation and is therefore not merely speculating about the FBI's activities.

■ This Court also finds Ms. Schrecker's argument that the search was inadequate because the FBI did not search the files of Assistant Directors D.M. Ladd and Gordon Nease to be without merit. The FBI has stated that these files do not exist and Ms. Schrecker has not provided any evidence to refute the FBI's assertion.

In accordance with the foregoing analysis, the Court will grant the FBI's motion for summary judgment on the issue of an adequate search for ticklers. The FBI has adequately demonstrated that it performed the search ordered by the D.C. Circuit. *See Schrecker,* 254 F.3d at 162. The Court finds no genuine issues of material fact and has relied upon the FBI's declarations and affidavits, which demonstrate that the FBI has conducted a reasonable and adequate search, undertaken in good-faith, for responsive documents.

**C. Plaintiff's Motion for Discovery to Determine Adequacy of FBI's Search for Ticklers.**

■ Discovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains. *See Judicial Watch, v. U.S. Dep't of Justice,* 185 F.Supp.2d 54, 65 (D.D.C.2002). Discovery is only appropriate when an agency has not taken adequate steps to uncover responsive documents. *See SafeCard v. Securities and Exchange Com'n,* 926 F.2d 1197, 1202 (D.C.Cir.1991).

Ms. Schrecker argues that based upon the FBI's resistance to the search for tickler files she should be allowed discovery and the opportunity to depose Mr. Hodes and the expert at the FBI's Central Records System in order to determine the adequacy of the FBI's search. *Plaintiff's Cross–Motion* at 13.

██ Ms. Schrecker has not filed any evidence supporting her contention that discovery is warranted regarding the adequacy of the FBI's search. *See Campbell v. United States Dep't of Justice,* 193 F.Supp2d. 29, 35 (D.D.C.2001). The court in Campbell held that discovery was appropriate since the FBI utterly failed to carry its burden of demonstrating that it undertook a reasonably calculated search to uncover relevant documents. *Id.* at 35. In the present case the FBI reasonably searched for documents in a manner calculated to locate responsive documents. This Court finds that neither discovery nor a deposition of Mr. Hodes is warranted as the FBI met its burden of demonstrating it had adequately searched for responsive documents.

Ms. Schrecker argues that the FBI should use the methods used to find ticklers regarding the Kennedy assassination. *See Plaintiffs Cross–Motion* at 12. The standard for searching for responsive documents is a standard of reasonableness and here the FBI has conducted a reasonable search and therefore it is not necessary for FBI to copy the same search methodology as other cases, which are unrelated to the present case.

### D. Balancing of Interests

██ Exemption 7(C) authorizes an agency to withhold information that was gathered for law enforcement purposes and "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *See* U.S.C. 552(b)(7)(C). Invocation of exemption 7(C) is appropriate when the privacy interest is greater than the public interest in disclosure. An agency claiming exemption 7(C) must engage in a balancing of the public interest in disclosure versus the privacy interest in withholding information in order to justify adequately withholding information under 7(C). *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

██ Whether or not the subject of the withheld information is still alive should be considered in balancing the privacy interests versus the public interest in disclosure of information. Death does not extinguish a privacy interest but it does affect the weight accorded the privacy interest. *Schrecker,* 254 F.3d at 166. An agency must make a "reasonable effort to account for the death of a person on whose behalf the FBI invokes exemption 7(C)." *See Campbell,* 164 F.3d at 33 (Citing *Summers v. Dep't of Justice,* 140 F.3d 1077, 1084–85 (D.C.Cir.1998)). In *Campbell* the court held that the FBI's efforts to determine whether or not an individual was alive or dead for the purposes of exemption 7(C) were satisfied. *Campbell,* 193 F.Supp.2d, 29, 40. In *Campbell* the case was remanded on the issue of adequately balancing the privacy interests versus public interest and the court held that the FBI justified its burden of balancing the interests by adopting the 100–yr test, consulting *Who Was Who,* and employing general institutional knowledge regarding whether someone was alive or dead. *Id.* The 100–yr test assumes that individuals who would be over 100 years old are dead for the purposes of balancing private versus public interests. *Id.*

This Court must determine whether defendant FBI did all that it should have in balancing the public interest versus the

privacy interests of individuals. *See Schrecker*, 254 F.3d at 165. The D.C. Circuit stated that it was unable to determine whether the FBI reasonably balanced the privacy interests. *Id.* The D.C. Circuit found that it was unclear what the FBI had done to determine whether an individual was alive or dead, and therefore the Court remanded with instructions for the FBI to document what was done and specifically to clarify whether it had consulted the Social Security Death Index ("SSDI"). *Id.* at 167.

The FBI argues that it undertook adequate measures to determine whether or not individuals were still alive. *See 6th Hodes Decl.* at 12; *5th Hodes Decl,* at 6–8. The FBI employed the 100 year rule; if a birth-date was available within a responsive document and that person would be over 100 years old then the individual's name and other identifying information were released. *Id.* at 7. If the FBI had institutional knowledge of an individual's death or an individual was named in *Who Was Who,* that individual's death was taken into account for 7(C) purposes. *Id.* If a social security number was revealed within a responsive document then the FBI consulted the Social Security Death Index to determine if an individual was still alive. *Id.* The FBI stated that following the August 12, 1998 remand the FBI employed all of the above methods on all responsive documents in an attempt to determine whether individuals were over 100 years of age or deceased. *Id.* at 12.

Ms. Schrecker moves for summary judgment on the issue of the FBI's efforts to conduct an adequate search to determine whether individuals were alive or dead for the purposes of exemption 7(C). *See Plaintiff's Cross–Motion,* at 2–8. Ms. Schrecker argues that the FBI has not complied with the June 26, 2001 decision of the D.C. Circuit. *Id.* at 2.

This Court finds that Mr. Hodes's declarations indicate a good faith attempt to disclose as much information as possible and that the FBI adequately balanced privacy interests versus public interests. *See Campbell,* 193 F.Supp.2d at 40–41. Whether an individual is alive or dead affects this calculus. In *Campbell* the court found that the FBI met its burden under Exemption 7(C) by consulting *Who Was Who,* and using internal sources to determine whether an individual was alive or dead. *Id.* An inquiry into the mortality status of individuals is particularly important in the present case where events occurred over fifty-years ago. Therefore, to gauge accurately whether the FBI did in fact adequately balance these interests it is necessary to evaluate how the FBI sought information regarding the mortality of individuals whose personal information was being withheld from Ms. Schrecker. Here the FBI has employed several methods to try and determine whether an individual is alive or dead. The FBI consulted *Who Was Who,* internal sources, and where possible the SSDI and previous FOIA requests. *5th Hodes Dec'l,* at 6–8; *6th Hodes Dec'l* at 9. The fact that institutional information and the responsive documents themselves do not contain sufficient information to warrant a release does not mean that the FBI's methodology is flawed. Here the FBI has attempted to ascertain whether individuals were alive for the purposes of balancing privacy versus public interests under 7(C); whether or not the FBI released any information is not a factor in determining whether their actions were adequate under FOIA. *See Steinberg v. U.S. Dep't of Justice,* 23 F.3d 548, 551 (D.C.Cir.1994).

Professor Schrecker argues that the FBI should use the SSDI with names when social security numbers are not available. *Plaintiff's Reply,* at 4–5. Pro-

fessor Schrecker argues that in a previous FOIA request regarding Joseph Fischetti, a Chicago organized crime figure, the FBI accepted SSDI print-outs to determine his mortality status for the purposes of FOIA. *Id.* at 4–5.[2] This Court is unpersuaded by Professor Schrecker's argument. Mr. Fischetti was the subject of the FOIA inquiry, he was not subject to the third-party privacy interest that is under debate at the moment. *See Plaintiff's Reply*, at 5. In the case regarding Mr. Fischetti, the FBI looked at internal documents to verify that the correct individual was deceased. *Id.* There is no basis for the FBI to have to search through unresponsive documents to determine the mortality status of third-parties to FOIA requests. It would be unduly burdensome to hunt-down the social security number for every third-party mentioned in a responsive document. *See Nation Magazine*, 71 F.3d at 892. This Court is unpersuaded by Professor Schrecker's argument that the name of the individual provides enough information. *See Plaintiff's Reply*, at 5. Using the SSDI with only a name does not resolve the need for a social security number to verify the identity of the individual. The FBI needs a social security number to verify the individual in the database is indeed the individual who is deceased. Therefore, if the social security number is not available in a responsive document, it would require the FBI to consult other internal sources to determine the social security number. This Court does not find that "readily available information" includes scouring through unresponsive files to try and determine whether third-parties are alive or

dead. *See Schrecker* 254 F.3d at 167. The court directed the FBI to confirm or to take certain basic steps to determine whether individuals are alive or dead. *Id.* The D.C. Circuit could not confirm that the FBI had used the SSDI. In the 6th *Hodes Dec'l* the FBI states that the *SSDI* was implemented if a social security number was available. *6th Hodes Dec'l*, at 10.

On remand, this Court is to decide if the government did all it should have done to balance the privacy interests versus public interests in disclosure. *See Schrecker*, 254 F.3d at 167. Under the 100–year rule, the FBI has asserted that if a person's age was determined to be over 100 based on the information in the responsive documents, then it would be assumed that the individual was deceased and this would be taken into consideration for balancing purposes. *See Def. Renewed*, at 6–8. Exemption 7(C) protects third-parties even after death although the weight of the interest is lessened, but if there is little to no public interest in revealing the information, then the privacy interest will outweigh the release of the information. *See U.S. Dep't of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. 749, 756, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). The search for documents under is FOIA is based on a reasonable standard and therefore this Court finds that a search for ascertaining a person's mortality should also be based upon a reasonable effort. Here the FBI has documented what it looked for and the fact it did not release additional information does not mean that the search was inadequate. *Steinberg*, 23 F.3d at 551.

**2.** In another FOIA litigation case Professor Schrecker's counsel, Mr. Lesar, submitted an SSDI print-out to the FBI for the purposes of releasing information regarding Chicago organized crime figure, Joseph Fischetti. The print-out contained social security numbers and birth dates for individuals by the name of Joseph Fischetti. The FBI referenced its internal files to determine if the Joseph Fischetti in their files matched one of the names on the SSDI print-out; the FBI found the social security number and released responsive documents.

### III. Conclusion

This Court finds that the FBI has met its burden of complying with the D.C. Circuit's June 26, 2001 decision. *See Schrecker*, 254 F.3d 162. The FBI has demonstrated that no genuine issues of material fact exist. The FBI has adequately searched for ticklers by physically searching both field offices where the investigation of Jencks and Eisler occurred and by physically searching the portions of NSD where responsive files would be located. Therefore the Court finds that the FBI is entitled to summary judgment regarding the adequacy of its search for ticklers. This Court also finds that the FBI has adequately balanced the public versus privacy interests under 7(C) by attempting to ascertain, by several methods, whether individuals are alive or dead. Therefore the FBI's motion for summary judgment regarding the adequacy of balancing public interests versus privacy interests is granted. A separate Order consistent with the foregoing opinion has been entered this day.

### ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

ORDERED that defendant's Motion for Summary Judgment is GRANTED, and plaintiff's Motion for Summary Judgment is DENIED.

This action shall stand DISMISSED WITH PREJUDICE.

SO ORDERED.